# In the United States Court of Federal Claims

### No. 14-397L
### (Filed: July 21, 2015)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | \* | |
| **GLORIA J. JACKSON, et al.,** | \* | **Motion to Strike; Summary** |
| | \* | **Judgment; Credibility;** |
| **Plaintiffs,** | \* | **Reliability; Genuine Issue of** |
| | \* | **Material Fact; Rule 56(c).** |
| **v.** | \* | |
| | \* | |
| **THE UNITED STATES,** | \* | |
| | \* | |
| **Defendant.** | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \*

Mark F. (Thor) Hearne, II, Lindsay S.C. Brinton and Meghan S. Largent, Arent Fox, LLP, 112 South Hanley Road, Suite 200, Clayton, MO 63105, for Plaintiffs. Debra J. Albin-Riley, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

John C. Crudent and Stephen Finn, United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, 601 D Street, N.W., Washington, D.C. 20004, for Defendant. Craig Keats and Evelyn Kitay, Surface Transportation Board Office of the General Counsel, 395 E Street, S.W., Washington, D.C. 20024, Of Counsel.

_____

### ORDER DENYING PLAINTIFFS' MOTION TO STRIKE DECLARATION IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

**WILLIAMS**, Judge.

This matter comes before the Court on Plaintiffs' "objections to and motion to strike Cindi A. Straup's declaration filed by the Government in support of its motion for summary judgment." Defendant opposes this motion. For the reasons stated below, Plaintiffs' motion is denied.

### Background

Plaintiffs claim that the Government effected a taking of their property when the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") on August 19, 2013, pursuant to the National Trails System Act Amendments of 1983 ("Trails Act"). Plaintiffs claim that their predecessor owners granted easements to the Middle Georgia & Atlantic Railway ("MGAR") for the sole purpose of operating a railroad, and that once these rights-of-way

were no longer used for railroad operations, Plaintiffs obtained the exclusive right to ownership, possession, and use of this property.  Plaintiffs further claim that the August 19, 2013 NITU prevented the rights-of-way from being abandoned and reverting to the fee simple landowners and gave MGAR's successor railroad authorization to negotiate trail use with a non-railroad trail sponsor, thus imposing a new easement for railbanking and recreational use on their land. Defendant asserts that Plaintiffs have no property interest as Plaintiffs' predecessor owners granted the railroad a fee simple interest in their land, or, if easements were granted, these easements were broad enough to encompass use of the land as a recreational trail.

## Discussion

Currently before the Court are the parties' cross-motions for summary judgment on liability.  In support of their motions, both parties submitted maps depicting the location of Plaintiffs' properties overlaid by parcels from early 20th century railroad Valuation Maps filed with the Interstate Commerce Commission.[1]  The parties used the Valuation Maps to determine the location of the land conveyed by each original grantor.  Plaintiffs' mapping was done by Jennie Brandon and her employer, Stantec, and Defendant's mapping was done by Cindi Straup and her firm, Straup Solutions, LLC.  The parties created their maps to identify the original conveyances from which Plaintiffs derived their property interests, but based upon differences in their maps, the parties disagree as to which original deeds correspond to property owned by several Plaintiffs.

Plaintiffs move the Court to strike the declaration of Cindi Straup, Exhibit B to Defendant's cross-motion for summary judgment.  In this declaration, Ms. Straup, the Managing Director of Straup Solutions, LLC, stated that she was retained by the Government in this case "to perform review, research and mapping for named [P]laintiffs' properties and the abandoned railroad right-of-way adjacent to those properties." Def.'s Mot. Partial Summ. J. App. B at ¶¶ 1-2.  As stated in her curriculum vitae, Ms. Straup has a background in accounting and litigation services and is not a surveyor or engineer.  The Government did not proffer Ms. Straup as an expert.

The declaration of Ms. Straup sets forth how she and her company, Straup Solutions, LLC, created the maps upon which Defendant relies in seeking summary judgment.  Ms. Straup explained the process of creating the Government's maps as follows:

> We were provided the valuation maps and schedules for the corridor identified in the [NITU] by the [STB] in this matter. The maps were geo-referenced and overlaid onto aerial photographs and street data.  The beginning and ending points of the NITU corridor were also identified using the NITU reference.  Once the valuation maps were geo-referenced, the valuation parcels were digitized and Grantor information was captured from the deeds and deed schedules provided.  In addition the length of each valuation parcel was measured using GIS software measuring tools.

---

[1]      Plaintiffs submitted one large map, and Defendant submitted a large map as well as maps showing smaller sections of the railroad corridor.  Both parties also created tables linking the properties of individual Plaintiffs with those described in deeds of original grantors based on the Valuation Map information.

We were also provided with a list of Plaintiffs and their deeds.  We used tax maps from Newton County, Georgia along with the documents provided and created a geo-referenced tax map layer that was overlaid onto the valuation map in order to locate the Jackson Plaintiffs' properties.  Using the known location of the Plaintiffs' properties, we correlated each Plaintiffs' property to the Valuation maps and parcels covering those same locations.

Def.'s Mot. Partial Summ. J. App. B at ¶¶ 3-4.

Plaintiffs, invoking Rule 56(c), assert that Ms. Straup's declaration should be stricken because Ms. Straup lacks sufficient qualifications in surveying and title examination.  Pls'. Mot. to Strike 1-2.  Plaintiffs assert that Ms. Straup is not qualified to offer an opinion "to establish the factual location of the original conveyances to the railroad right-of-way and the location of the original conveyances relative to the present-day Georgia landowners' parcels."  Id. at 4.  Plaintiffs contend that Ms. Straup has "no training, education, or certification" to opine on "the physical location of the land described in ancient deeds as co-located with present-day boundaries derived with GIS mapping technology," and thus that her declaration does not provide "credible and admissible evidence that contests Stantec's mapping."  Pls. Reply to Mot. to Strike 3.

After Plaintiffs filed their motion to strike, Defendant submitted a second declaration of Ms. Straup with its reply to its cross-motion.  This second declaration provides increased detail about Ms. Straup's background and the mapping process.  Ms. Straup explained that her staff includes mapping professionals with over 15 years of experience, "Bachelors of Science in Geographic Information System and Masters in Geospatial Information Science," and an engineer "with over 30 years of service and direct experience in railroad right of way matters who is a licensed surveyor in the State of Georgia."  Def's. Reply Ex. F ¶ 3.  Ms. Straup further detailed how the maps were created, explaining the mileposts, sources, and techniques used to identify the locations and associate Plaintiffs' properties with those of original grantors.  Id. at ¶¶ 5-7.

Plaintiffs do not address this second declaration in their reply. Instead, Plaintiffs contend that they have established the accuracy of their map because they hired Stantec, "a national land-planning and land surveying firm" and their map was created by Stantec employee Jennie Brannon, "a registered surveyor possessing experience and training in land-planning and land mapping."  Pls'. Reply to Mot. to Strike 2. While Plaintiffs assert that their map was created by "a respected and experienced national land surveying firm," they do not proffer Ms. Brannon as an expert. At the same time, Plaintiffs seem to urge the Court to impose a requirement that Ms. Straup be qualified as an expert in "mapping property boundaries, surveying, and cartography" and construe Ms. Straup's maps to reflect an expert opinion on both the locations of the properties described in the original conveyances and the locations of the properties Plaintiffs owned at the time of the alleged taking.  See Pl's. Reply to Mot. to Strike 3-4.

Plaintiffs move to strike Ms. Straup's declaration under Rule 56(c)(2) and Rule 56(c)(4). However, neither of these rules provide a basis for striking Ms. Straup's testimony.  Under Rule 56(c)(2), a party may object to material cited to support or dispute a fact on the basis that it cannot be presented "in a form that would be admissible as evidence." RCFC 56(c)(2). Other than arguing that Ms. Straup lacks the requisite qualifications to opine on the property locations, Plaintiffs have not raised any reason why the contents of her declaration, including information about herself, her company, and how the maps were created, could not be presented in a form admissible as evidence.

The testimony of Ms. Straup is not so deficient that it is inadmissible or warrants being stricken.

Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." RCFC 56(c)(4). Plaintiffs argue that Ms. Straup is not competent to testify because she "has no education or training as a surveyor or title examiner." Pls'. Mot. to Strike ¶ 3. Plaintiffs confuse the notion of competency with expertise. In essence, Plaintiffs' motion to strike Ms. Straup's declaration is a veiled Daubert challenge to exclude expert testimony as unreliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999). However, as the First Circuit has recognized, "courts will be hard pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record." Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 188-89 (1st Cir. 1997). The lack of an adequate record in especially poignant here where the parties have not designated their competing map-makers as experts or acknowledged whether they are offering expert opinions on the locations of Plaintiffs' properties.

Plaintiffs ask this Court to adopt their map and reject Defendant's, arguing that their map definitively "provides the factual predicate upon which this Court can apply the Federal Circuit's liability analysis." Pl's. Reply to Mot. to Strike 3-4. In so arguing, Plaintiffs ask the Court to exceed the bounds of summary judgment procedure and find as a matter of fact that their map, but not Defendant's, is accurate. In a similar vein, by arguing that Ms. Straup does not have the requisite experience to create Defendant's maps, Plaintiffs posit that their map is the only one the Court should find credible. However, credibility determinations are beyond the province of summary judgment. In adjudicating a motion for summary judgment, the Court may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir. 1998). Summary judgment provides trial courts with a procedural vehicle, a "shortcut" to avoid holding a full-blown trial when there are no genuine issues of material fact to be resolved. RCFC 56(a). As is evident from Plaintiffs' motion to strike, the accuracy of each party's competing maps is a hotly disputed material factual issue here.

Because the declaration of Ms. Straup and the maps her company created illuminate potential genuine issues of material fact, it is appropriate for the Court to consider these materials in ruling on summary judgment. As such, Plaintiffs' motion to strike Ms. Straup's first declaration is **DENIED**.

Alternatively, Plaintiffs request that the Court permit discovery into the contents of Ms. Straup's declaration. Pls'. Mot. to Strike 2. Plaintiffs do not state a specific purpose for conducting such discovery, but only request the "opportunity to conduct discovery into those matters alleged by [Ms.] Straup in her declaration and to take the deposition of [Ms.] Straup under oath . . . concerning those assertions she makes in her declaration." Id. Plaintiffs have not suggested that they would be unable "to present facts essential to justify [their] opposition" to Defendant's motion absent the deposition of Ms. Straup. RCFC 56(d)(2). In this Court's view, little would be accomplished by a deposition of Ms. Straup probing her first declaration. The basis for her conclusions in that declaration, as well as a description of how she and her staff created the maps, were detailed in her second declaration. Any further arguments as to the level of Ms. Straup's expertise or the reliability of her conclusions would not eliminate factual disputes inherent in the

maps themselves or avoid the pitfall of assessing credibility and weighing evidence on summary judgment.   Plaintiffs' request for a deposition of Ms. Straup for purposes of challenging Defendant's motion for summary judgment is **DENIED**.[2]

<div style="text-align: center; margin-left: 40%;">

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

</div>

---

[2] This order does not foreclose a deposition of Ms. Straup for other purposes as this litigation continues.