# In the United States Court of Federal Claims

### Nos. 14-397L, 15-194L
### (Filed: November 20, 2017)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| GLORIA J. JACKSON, **et al.,** | **Partial Summary Judgment; Class Action; Fifth Amendment Takings; National Trails System Act; 16 U.S.C. § 1247(d); Ga. Code Ann. § 1689 (1882); Ga. Code Ann. § 2167 (1895); Fee Simple; Right-of-Way; Creation of Easement Under Georgia Law; Strips and Gores Doctrine.** |

GLORIA J. JACKSON, **et al.,**

          **Plaintiffs,**

v.

THE UNITED STATES,

          **Defendant.**

**Partial Summary Judgment; Class Action; Fifth Amendment Takings; National Trails System Act; 16 U.S.C. § 1247(d); Ga. Code Ann. § 1689 (1882); Ga. Code Ann. § 2167 (1895); Fee Simple; Right-of-Way; Creation of Easement Under Georgia Law; Strips and Gores Doctrine.**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Mark F. (Thor) Hearne, II, Lindsay S.C. Brinton and Meghan S. Largent, Arent Fox, LLP, 112 South Hanley Road, Suite 200, Clayton, MO 63105, for Plaintiffs. Debra J. Albin-Riley, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

John C. Cruden and Stephen Finn, United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, 601 D Street, N.W., Washington, D.C. 20004, for Defendant. Craig Keats and Evelyn Kitay, Surface Transportation Board Office of the General Counsel, 395 E Street, S.W., Washington, D.C. 20024, Of Counsel.

---

## OPINION AND ORDER

---

**WILLIAMS**, Judge.

      Plaintiffs, 47 property owners in Newton County, Georgia, claim that the Government effected a taking of their property when the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") on August 19, 2013, pursuant to the National Trails System Act ("Trails Act"). Plaintiffs claim that their predecessor owners granted easements to the Middle Georgia & Atlantic Railway ("MGAR") for the sole purpose of operating a railroad, and that once these easements were no longer used for railroad operations, the property reverted to Plaintiffs in fee simple. Plaintiffs claim that the NITU prevented this reversion and imposed a new easement for a recreational trail and "railbanking" on their land.[1] In contrast, Defendant

---

[1]     "Railbanking" is a mechanism whereby railroads ceasing operations on particular lines would convey the lines to qualified entities to operate the rights-of-way as interim recreational trails pending future reactivation of rail service. 16 U.S.C. § 1247(d) (2016); see Preseault v. Interstate Commerce Comm'n, 853 F.2d 145, 147 (2d Cir. 1988).

asserts that Plaintiffs' predecessor owners granted the railroad a fee simple interest, or, if easements were granted, these easements were broad enough to encompass use of the land as a recreational trail.

Currently before the Court are the parties' cross-motions for partial summary judgment. For the reasons stated below, the Court grants in part each party's cross-motion.

## Background[2]

### The Railroad Line

In September 1889, the Georgia legislature granted the Eatonton & Machen Railroad Company a charter to "construct, lay out, maintain, equip and operate a line of railroad from the town of Eatonton, in Putnam county, to the town of Machen, in Jasper county, in this State . . . ." Pls.' Mot. Summ. J. App. C, at C-4.  The railroad's charter incorporated Section 1689(l) of the Georgia Code, stating:

> That section 1689(l) of the Code of this State, concerning the acquisition of rights-of-way and other property for the construction of railroads, and setting forth the methods of proceeding to condemn such property in certain cases therein stated, be, and the same is hereby, made a part of this charter and incorporated into the same, and all powers, rights, privileges and franchises set forth and described in said section may be exercised by [the Eatonton & Machen Railroad Company] in the matter therein set forth.

Id.

A month later in October 1889, the Georgia legislature passed an Act to change the name of the Eatonton & Machen Railroad Company to the Middle Georgia and Atlantic Railway Company ("MGAR"). Id. at C-11.  After receiving its charter, MGAR "assembled its rail system between 1890 and 1894." Second Am. Compl. Ex. 1, at 17.[3]  The railroad line between Eatonton and Machen, Georgia opened in 1891, and an extension from Machen to Covington was completed in 1893.  Id.  To construct this rail line, MGAR obtained property rights from local landowners. MGAR used a standard form, labeled "Right of Way," for these conveyances, with blank spaces to be filled in by the landowners.  Plaintiffs refer to the form as a "Right-of-Way deed," Defendant refers to it as an "1890-1894 Deed," and the Court refers to it as the "MGAR form deed."

In December 1896, the Central of Georgia Railroad Company ("CGA") purchased MGAR in a foreclosure sale.  Id.  In 1899, CGA extended the line to Porterdale to serve a textile mill and obtained property rights from local landowners for this construction.  CGA used its own pre-printed forms for these conveyances, with blank spaces to be filled in by the landowners.

---

[2]      This background is derived from the parties' pleadings and attachments to their motion papers.

[3]      Exhibit 1 is the "Combined Environmental and Historic Report" that Central of Georgia Railroad Company submitted to the Surface Transportation Board on April 24, 2013.

Southern Railway Company ("SR") purchased CGA on June 17, 1963.  Id.  In 1971, SR merged CGA with two other railroad companies, the Savannah Atlanta Railway and the Wrightsville and Tennille Railroad, to form the Central of Georgia Railroad Company.  Id.  Norfolk Southern Corporation acquired control of SR on June 1, 1982.  Id.  In 1989, SR leased the former MGAR line to the Great Walton Railroad.  This line included the segment at issue.  Id. at 18.  In December 1990, SR changed its name to Norfolk Southern Railway Company.  Id. at 17.  In 2010, Norfolk Southern Railway Company and Great Walton Railroad "each obtained regulatory authority to discontinue service over the Newborn-Covington line segment . . . ."  Id. at 18.  According to Central of Georgia Railroad Company's Environmental and Historic Report, this line has been inactive since 2010, when rail service was "legally discontinued."  Id. at 15.

**The Railroad's Petition to "Abandon" the Corridor**

This case concerns 14.9 miles of rail line between Mileposts E 65.80 near Newborn and E 80.70 near Covington in Newton County, Georgia.  Id. at 17.  On July 1, 2013, Central of Georgia Railroad Company, as a wholly-owned subsidiary of Norfolk Southern Railway Company, filed "a verified notice of exemption" with the STB "to abandon 14.90 miles of rail line" between milepost E 65.80 and milepost E 80.70.  Id. Ex. 2, at 48.

On July 26, 2013, the Newton County Trail Path Foundation filed a request that the STB issue a Public Use Condition and a Certificate or Notice of Interim Trail Use rather than an outright abandonment authorization for this section of rail line.  Id. Ex. 3, at 1.  In its filing with the STB, the Trail Path Foundation described the location of milepost E 65.80 as "the point of the line's crossing of Route 229 in Newborn" and that of Milepost 80.70 as "near the intersection of Washington Street, SW, and Turner Lake Road, SW, in Covington."  Id. Ex. 3, at 2.

On August 19, 2013, the STB issued a NITU and Public Use Condition.  Id. Ex. 4.  The NITU provided a 180-day period for Central of Georgia Railroad Company and the Newton County Trail Path Foundation to negotiate an interim trail use agreement for the use of the line as a trail.  Id. Ex. 4, at 2.  The NITU also stated that interim trail use/railbanking was subject to "possible future reconstruction and reactivation of the right-of-way for rail service . . . ."  Id. at 4.  The STB extended the NITU several times in 2015 and 2016.  Pls.' Not. (ECF No. 61); Def.'s Not. (ECF No. 83).  The NITU was set to expire on January 30, 2017, but on September 28, 2016, the Central of Georgia Railroad Company and the Trail Path Foundation entered into a Lease Agreement for interim trail use and railbanking for the entire line.  Pls.' Not. Ex. A (ECF No. 95).

On October 14, 2016, CGA, in a letter to the STB, requested that a correction to the NITU be made, explaining that CGA determined that the map attached to its July 1, 2013 Notice of Exemption "did not properly depict the precise location of milepost E-65.80."  Def.'s Not. Ex. A (ECF No. 96).  Specifically, CGA stated that the description of milepost E 65.80 as "the point of the Line's crossing of Route 229 in Newborn, Georgia" was incorrect in that milepost E 65.80 "properly corresponds to a point just east of the Ziegler Road crossing west of downtown Newborn, Newton County, Georgia."  Id.

On November 18, 2016, the STB issued a decision accepting CGA's and Newton Trail's revised map and modifying the NITU to correct the reference to milepost E 65.80.  Id. Ex. C.

**The Landowners**[4]

Plaintiffs claim that they acquired their parcels prior to the STB's issuance of the NITU on August 19, 2013, and that they owned property abutting and underlying the railroad corridor at the time of the NITU. Plaintiffs claim their property interests in this railway corridor on the basis of 19th century deeds, and Defendant posits that a somewhat different list of 19th century deeds is controlling. The parties agree that the railroad traversed an area of land, referred to as the "Samuel Johnson Condemnation," without obtaining any deed. Three Plaintiffs own property covered, in whole or in part, by the Samuel Johnson Condemnation.

## Discussion

**Summary Judgment Standard**

Plaintiffs and Defendant move for summary judgment on the issue of liability. Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit." Id. at 248. The moving party bears the burden of establishing the absence of any material fact, and any doubt over factual disputes will be resolved in favor of the nonmoving party. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once this burden is met, the onus shifts to the nonmovant to present evidence from which a finder of fact might rule in his favor. If he does so, there is a genuine issue of fact that requires a trial. Liberty Lobby, 477 U.S. at 257.

When considering a motion for summary judgment, a court does not weigh each side's evidence, but views the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). When opposing parties both move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, 812 F.2d at 1391. In adjudicating a motion for summary judgment, "'the Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues.'" Nacchio v. United States, 115 Fed. Cl. 195, 200 (2014), aff'd in part, rev'd in part on other grounds and remanded, 824 F.3d 1370 (Fed. Cir. 2016) (quoting Mansfield v. United States, 71 Fed. Cl. 687, 693 (2006)). Cross-motions for summary judgment "are not an admission that no material facts remain at issue," since "the separate summary judgment motions of each party may focus on different legal principles" and rely on different sets

---

[4]     On October 16, 2015, the Court consolidated this case with Guenther, et al. v. United States, No. 15-194L. The Guenther plaintiffs are a group of landowners in Newton County, Georgia, whose takings claims arise out of the same August 19, 2013 NITU. However, because the cases were consolidated after the Jackson plaintiffs filed their summary judgment motion, the Guenther plaintiffs' claims are not the subject of the cross-motions for summary judgment before the Court.

of facts.  Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citing United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978)).

**Takings Claims and the Trails Act**

Congress enacted the Trails Act to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails.  Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990) ("Preseault I"); see also 16 U.S.C. § 1241 et seq. (2016).  The operation of the Trails Act is subject to the Fifth Amendment to the United States Constitution, which provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Accordingly, when private property interests are taken by the Government pursuant to the Trails Act, the property owners are entitled to just compensation.  See Preseault I, 494 U.S. at 13. Because property rights arise under state law, Georgia law governs whether the landowners in this case have a compensable property interest.  See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984) (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)); Preseault I, 494 U.S. at 20–25 (O'Connor, J., concurring).

In a rails-to-trails case, a taking, if any, occurs when "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004).  The Trails Act prevents a common law abandonment of the railroad right-of-way from being effected, thus precluding state law reversionary interests from vesting.  Id. at 1229.  Stated in traditional property law parlance, upon abandonment or termination of a railroad's easement, "the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such burden."  Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004).  By preventing the abandonment and concomitant restoration of a fee simple unburdened by the easement, the Trails Act effects a taking.  See Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir. 2006).

As the Federal Circuit has explained:

Abandonment is suspended and the reversionary interest is blocked "when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)" of the Trails Act.  We concluded that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way."  Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.

Id. at 1373 (quoting Caldwell, 391 F.3d at 1233-34) (alteration and emphasis in original) (internal citations omitted).  If standard abandonment had occurred under 49 U.S.C. § 10903, the railroad, as the owner of the servient estate, would not retain any property interest in the right-of-way, and that property interest would revert to the dominant landowner.  Id. at 1371.  Thus, the Trails Act, in preventing this reversion, effects a taking.  See id.  In another sense, the taking occurs when the Government, pursuant to the Trails Act, creates a new easement for a new use over land that was encumbered by an easement limited to railroad purposes.  See Preseault v. United States, 100 F.3d 1525, 1550 (Fed. Cir. 1996) ("Preseault II") (describing the conversion of a railroad easement to

a recreational trail as "a new easement for [a] new use").  The statutory imposition of this second easement - - which otherwise had not been granted - - is a taking.  Id.

### Plaintiffs' Ownership Interests at the Time of the Issuance of the NITU

In any takings case, only persons with valid property interests at the time of the taking are entitled to compensation.  Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001).  A claimant must prove ownership in the property right that was allegedly taken when the claim accrued.  United States v. Dow, 357 U.S. 17, 20-21 (1958). The Federal Circuit has made clear that "[i]t is plaintiffs' burden to establish cognizable property interests for purposes of their takings . . . claims."  Klamath Irrigation Dist. v. United States, 635 F.3d 505, 519 n.12 (Fed. Cir. 2011) (internal citations omitted).

Each of the 47 Plaintiffs claims at least one property interest in land abutting and underlying the railway, and some Plaintiffs allege multiple property interests.  Throughout their briefing, Plaintiffs and Defendant used different numbering systems to identify Plaintiffs' claims for individual parcels.  For ease of reference, the Court adopts Plaintiffs' numbering system as used in the parties' spreadsheet.  Pls.' Not. Ex. 1 (ECF No. 67).  Plaintiffs and their respective claims are listed in Appendix A.

Defendant disputes the claimed location of eight of Plaintiffs' parcels, arguing that those parcels are not adjacent to and underlying the railroad corridor.  Def.'s Mot. Summ J. 34-36.  The owners of these eight parcels are Louise Sanford, Gloria J. Jackson, Betty Walton, GA Building Authority, Leonard D. and Argie Hardeman, Randall and Katheryn Smith, Miller Property and Renovation, LLC, and Greyland Real Estate Investments Inc.[5]

### Plaintiff Walton's Property is Located Outside the Boundaries of the NITU

In supplemental briefing, Plaintiffs conceded that Plaintiff Betty Walton does not own property within the scope of the NITU.  Pls.' Resp. Ex. 1 (ECF No. 67); Joint Resp. App. A, at 21 (ECF No. 109).  Plaintiffs propose voluntary dismissal without prejudice as to this claim, but Defendant asks for summary judgment.  Joint Resp. App. A, at 21 (ECF No. 109).  To establish a taking, a plaintiff must first "identif[y] a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking."  Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013).  Because Plaintiff Walton by her own admission does not possess a cognizable property interest in land allegedly taken, entry of judgment in Defendant's favor is warranted, not a voluntary dismissal that might permit this Plaintiff to again raise such claim.  See Barlow v. United States, 123 Fed. Cl. 186, 199-200 (2015) (granting defendant summary judgment where plaintiffs provided no conveying instruments to show ownership in the subject parcels at the time the NITU was issued); Thomas v. United States, 106 Fed. Cl. 467, 477 (2012) (granting defendant summary judgment where plaintiffs did not own parcels adjacent to the rail corridor).

---

[5]    In an order dated August 30, 2017, this Court denied the parties' cross-motions for summary judgment as to Plaintiffs Hardeman, Jackson, GA Building Authority, and Sanford in conjunction with ruling on Plaintiffs' motion to strike deposition testimony.  Order 7 (ECF No. 131).  The Court found that factual issues remained and that the record required further development on whether these Plaintiffs had suffered a temporary taking.  Id.

As such, the Court grants summary judgment in favor of Defendant on the claim of Betty Walton (Claim No. 274).

### Parcels That May Not Underlie or Abut the Railway Corridor

### The Property of Randall and Katheryn P. Smith

Plaintiffs assert that the parcel owned by the Smith Plaintiffs (Claim No. 155) abuts both the railroad corridor and East End Road, which Plaintiffs argue "is within the right-of-way." Pls.' Resp. 5 (ECF No. 67). Plaintiffs provide the following map in support of their claim and represent that the shaded area marked "155" is the Smiths' parcel:



Pls.' Reply Ex. 4 (ECF No. 82). Defendant argues that parcel No. 155 does not abut and underlie the railway corridor. Def.'s Mot. Summ. J. 35. Defendant provides the following map in support of its position and identifies the Smith Plaintiffs' parcel as the shaded area marked "Smith A. Randall:"



Def.'s Mot. Summ. J. Ex. G, at 92.  The parties further dispute whether East End Road, labelled as such on Defendant's map, is within the railroad corridor.  Pls.' Not. 5 (ECF No. 67); Def.'s Not. 13 (ECF No. 74).

      The parties' maps depict conflicting locations of the Smiths' property vis-à-vis the railway corridor.  Whether any portion of the Smith Plaintiffs' parcel No. 155 abuts and underlies the railway corridor and whether East End Road is within the railroad corridor cannot be resolved on the basis of this record.  The Court requires evidence on the preparation and interpretation of these conflicting maps.  In the event East End Road is determined to be located within the railroad corridor, facts addressing the legal import of this road on Plaintiffs' property rights may also be necessary to determine liability.

**The Property of Miller Property and Renovation**

Plaintiffs argue that the parcel owned by Plaintiff Miller Property and Renovation ("Miller"), Claim No. 60, abuts the railroad corridor "at the intersection of the right-of-way with Mill Street," giving rise to a taking. Pls.' Resp. 2 (ECF No. 67). Plaintiffs rely on the following map of the Miller property in relation to the right of way and represent that the rectangular area marked "60" is the Miller parcel:



Id. Ex. B.

Defendant argues that to the extent that this parcel touches the rail corridor, the "only potential property underlying the rail corridor extending from the parcel would fall under a street crossing [Mill Street] that is claimed by possessory title, i.e., adverse possession." Def.'s Resp. 6 (ECF No. 74). Defendant states that this crossing was claimed by possession over 100 years ago

and still is used as a public road today.  Id.; see also Ga. Code Ann. § 44-5-160 (2017) ("Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law."); Ga. Code Ann. § 44-5-163 ("Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.").[6]  Defendant also asserts that if any portion of the parcel abuts the corridor beyond Mill Street, it would be governed by the Butler deed, which conveyed a fee.  Def.'s Resp. App. A, at 2 (ECF No. 74).

Defendant provides the following map in support of its claim and identifies the Miller Property and Renovation parcel as "Miller Prop & Renovation:"

---

[6]       Ga. Code Ann. § 44-5-170 states: "[p]rescription shall not run against the rights of a minor during his or her minority, a person incompetent by reason of mental illness or intellectual disability so long as the mental illness or intellectual disability lasts, or a person imprisoned during his or her imprisonment."



Def.'s Mot. Summ. J. Ex. L.

The parties further dispute whether Mill Street, labelled as such on Defendant's map, is within the railroad corridor.  Pls.' Resp. 2 (ECF No. 67); Def.'s Resp. 6 (ECF No. 74).  The original deed transferring ownership to Miller Property and Renovation describes the location of the property as:

> Beginning at a point on the southwesterly side of South Mill Street 100 feet southwesterly, as measured along the southwesterly side of South Mill Street from the corner formed by the intersection of the southwesterly side of South Mill Street and the southwesterly right of way of Thompson Avenue.

11

Second Am. Compl. Ex. 43.  The deed does not reference any railway or railroad corridor.  See id.  Rather, the deed states on a single line in a standalone paragraph without context: "Subject to all easements and restrictions of record if any."  Id.

Whether any portion of the Miller Plaintiff's parcel (Claim No. 60) abuts and underlies the railway corridor and whether Mill Street is within the railroad corridor, are genuine issues of material fact that preclude entry of summary judgment for either party.  Again, the Court requires evidence on the preparation and interpretation of the maps.

### The Property of Greyland Real Estate Investments, Inc.

### Claim No. 39

Although the parties agree that only a corner of this .21 acre parcel touches the railroad corridor, they do not agree which deed applies to this parcel.  Joint Resp. App. A, at 4 (ECF No. 109).  Plaintiffs assert that the Wright deed applies and rely on the following map with the circled portion depicting Greyland's parcel:



Pls.' Reply Ex. F (ECF No. 82).  Defendant asserts that both the Wright deed and the Simms deed apply to this Greyland parcel, and rely on the following map:



Def.'s Mot. Summ. J. Ex. Q, at 98.

The Wright deed, dated April 9, 1890, contains the following language:

This Indenture Witnesseth: That the undersigned R.F. Wright has bargained, sold, and conveyed to the MIDDLE GEORGIA & ATLANTIC RAILWAY

COMPANY, a corporation, of said State, the following property: A strip of land situate in the 462nd District of Newton County, Georgia, Thirty feet wide, the same being Fifteen feet on each side the centre line of said Railroad, for a right of way of said Railroad, or for any other use, in the discretion of said Company, and more particularly described as follows:

Along the line of recent survey made by said Middle Georgia and Atlantic Rail Way Co.

The Consideration of this Deed is the sum of Ten Dollars paid by said Company to the undersigned before the execution of these presents.

To Have and to Hold the described land, with its members and appurtenances unto the said Middle Georgia & Atlantic Railway Company, its successors and assigns, forever.  And the said R.F. Wright will forever warrant and defend the title hereby conveyed to the said Railroad Company against any and every person whatsoever.

In Witness Whereof, the said R.F. Wright has hereunto set his hand and affixed his seal, and delivered these presents, this the Ninth day of April 1890.

Joint Not. Transcribed Conveyances Ex. 2, at 52.

The Simms deed, dated April 9, 1890, contains the following language:

This Indenture Witnesseth: That the undersigned Mrs. S.J. Simms has bargained, sold, and conveyed to the MIDDLE GEORGIA & ATLANTIC RAILWAY COMPANY, a corporation, of said State, the following property: A strip of land situate in the City of Covington District of Newton County, for a right of way of said Railroad, or for any other use, in the discretion of said Company, and more particularly described as follows:

Through my town lot as now laid out and graded & of sufficient width to make and maintain said Railroad in good & safe condition.

The Consideration of this Deed is the sum of One Dollars [sic] paid by said Company to the undersigned before the execution of these presents.

To Have and to Hold the said described land, with its members and appurtenances unto the said Middle Georgia & Atlantic Railway Company, its successors and assigns, forever.  And the said S.J. Simms will forever warrant and defend the title hereby conveyed to the said Railroad Company against any and every person whatsoever.

In Witness Whereof, the said S.J. Simms has hereunto set her hand and affixed her seal, and delivered these presents, this 22nd day of August 1892.

Id. at 54 (emphasis added).

On October 16, 2015, this Court ordered Plaintiffs to clarify the record as to Greyland's claim.  The Court stated:

To determine liability with respect to Plaintiff Greyland Real Estate and Investments Inc., the Court must determine whether Plaintiff has alleged a property interest in a parcel that abuts the railroad right-of-way. The record is unclear as to which parcels Plaintiff Greyland Real Estate claims were the subject of a taking. Plaintiff provided the Court with a deed for one parcel, three maps, each mapping the location of a different parcel, generated by the Newton County Assessor's Office online, and one Newton County Ad Valorem Tax Notice. Each of these five attachments appears to describe a different parcel. In addition, Plaintiffs attach in their reply brief, without explanation, a deed for a parcel that may correspond to one of the three Newton County Assessor's Office maps. Plaintiffs shall clarify which parcel(s) are at issue and correlate the deeds with such parcel(s).

Order 2 (Oct. 16, 2015) (ECF No. 63) (internal citations omitted).

In response, Plaintiffs submitted the Rutland deed, dated April 5, 2002, and stated:

Greyland Real Estate and Investments, Inc. (Greyland) has three parcels that abut and underlie the right-of-way. They are depicted on Exhibit 1 to the Declaration of J. Brannon as parcels with the map identification numbers 39, 41, and 43. All three parcels abut and underlie the portion of the right-of-way conveyed to the railroad by the R. Wright Deed (Book X, Page 388).

Pls.' Resp. 2 (ECF No. 67). Exhibit 1 to the Declaration of J. Brannon depicts the claims of all 47 Plaintiffs in this litigation. This single-page exhibit contains a large map on the left side of the page showing the entire portion of the rail corridor that is the subject of this litigation marked with the parcels belonging to each Plaintiff. On the right side of the page, there are four smaller maps showing close-ups of four different segments of the rail corridor. Greyland's parcel, Claim No. 39, is circled in the image below, which is insert A from Exhibit 1 to the Declaration of J. Brannon:



Brannon Decl. Ex. 1 (ECF No. 37).

Plaintiffs continued:

a. Map ID 39: The first parcel is Newton County Parcel Identification Number C0200-00170-004-000. This parcel contains .21 acres according to the Newton County Assessor's records. The corresponding tax receipt for the year 2013 is attached as Exhibit C. Greyland acquired this property by Deed Book 1201, Page 299. A copy of this deed is attached as Exhibit D.

Pls.' Resp. 2-3 (ECF No. 67) (internal citations omitted). Plaintiffs do not discuss Exhibit D, the Rutland deed, other than to say that this deed was Greyland's means of acquiring this property.

Defendant argues that Plaintiffs have not demonstrated that any of these six tracts of land described in the April 5, 2002 Rutland deed corresponds to Greyland's Claim No. 39, stating:

Plaintiffs have not identified which of the six tracts described in the deed is parcel C0200-00170-004-000. The six tracts within the deed variously reference prior deeds or plats to describe the property locations. These plats and deeds do not appear to have been provided to Defendant or the Court. Further, the tracts . . . are all on "East Street" but the property description . . . indicates the property is on "East Haven" and Exhibit 85 to Plaintiffs' Amended Complaint indicates that the property is at "2122 East Haven Drive."

Def.'s Resp. 7 (ECF No. 74) (internal citation omitted).

Plaintiffs did not respond to Defendant's arguments that the plats and deeds are not in the record, nor do they clarify the name of the street on which this Greyland property is located.  Pls. Reply 3 (ECF No. 82).  Plaintiffs state:

> This Court asked us to "clarify which parcel(s) are at issue and correlate the deeds with such parcel(s)."  We clarified this point in our response.  The government replied suggesting we had the wrong deeds for parcels 5(a) and 5(b).  The correct deed for both parcels 5(a) and 5(b) is found in Book 891, Page 488 and is attached as Exhibit 3.  The government does not object to paragraph 5(c) of our Response.

Id. (internal citations omitted).  Exhibit 3 is a copy of yet another deed dated January 10, 2000, from Sara M. Jernigan and W.D. Ballard to Greyland Real Estate Investments, Inc.  Plaintiffs do not discuss the Jernigan/Ballard deed.

It is unclear what property is encompassed in Greyland Claim No. 39 and what deed(s) control that property interest.  As such, the Court requires evidence on what property is the subject of Greyland Claim No. 39 and on the preparation and interpretation of the maps portraying this parcel.  The Court denies summary judgment to both parties on Greyland's Claim No. 39.

### Ruling on Parcels That Defendant Claims Do Not Abut or Underlie the Railroad Corridor

The Court grants summary judgment in favor of Defendant on the claim of Plaintiff Betty Walton (Claim No. 274) as this Plaintiff's parcel does not underlie or abut the railroad corridor.

The Court denies summary judgment to both parties as to the claims of Plaintiffs Randall and Katheryn Smith (Claim No. 155), Miller Property and Renovation (Claim No. 60), and Greyland Real Estate (as to Claim No. 39), as there are genuine issues of material fact as to whether these Plaintiffs had property interests at the time of the alleged taking.

### Whether the Railroad Acquired Easements or Fee Simple Estates Under the Original Conveyances

In Preseault II, the Federal Circuit explained that whether a plaintiff is entitled to compensation in a rails-to-trails case depends on three issues:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault II, 100 F.3d at 1533.

Whether the current landowners have a property interest in the land underlying and abutting the railroad right-of-way depends upon the language of the original conveyance that granted MGAR the property at issue.  See Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373-74

(Fed. Cir. 2009); <u>Toews</u>, 376 F.3d at 1376; <u>Rogers v. United States</u>, 90 Fed. Cl. 418, 428-29 (2009).  Plaintiffs assert that the deeds conveyed easements, while Defendant contends that the deeds conveyed property in fee simple.  The Court must examine these deeds in light of Georgia statutes and common law at the time that the deeds were executed.  <u>Preseault II</u>, 100 F.3d at 1534.

### The Georgia Code Provision Incorporated Into the Railroad's Charter Informs the Court's Interpretation of the Deeds

Plaintiffs argue that Georgia Code §1689, which was incorporated by reference into the Eatonton & Machen Railroad charter, necessarily limited the railroad's property interest in the original grantors' conveyances to an easement.  Ga. Code Ann. § 1689(i) (1882).[7]  This provision of Georgia's statute, "Powers of the corporation," states:

> [A corporation] shall be empowered, first, to cause such examinations and surveys to be made of the proposed railroad <u>as shall be necessary to the selection of the most advantageous route, and for such purposes to be empowered by its officers, agents, servants or employees, to enter upon the land or water of any person for that purpose</u>.  Second, to take and hold such voluntary grants of real estate and other property as may be made to it, <u>to aid in the construction, maintenance and accommodation of its road, but the real estate received by voluntary grant shall be held and used for the purpose of such grant only</u>.  Third, to purchase, hold and use all such real estate and other property <u>as may be necessary for the construction and maintenance of its road, and the stations, wharves, docks, terminal facilities, and all other accommodations necessary to accomplish the object of its incorporation</u>, and to sell, lease or buy any land <u>necessary for its use</u>.

<u>Id.</u> (emphasis added).  The statute stated that the purposes of the railroad's articles of association were constructing, maintaining, and operating a railroad for public use or maintaining or operating a railroad already constructed.  <u>Id.</u> at § 1689(a).

Further, the Georgia statute expressly granted the railroad eminent domain authority:

> In the event of any company organized under the provisions of this section does not procure from the owner or owners thereof, by contract, lease or purchase, the title to the lands, or right of way, or other property necessary or proper for the construction or connection of said railroad and its branches or extensions . . ., it shall be lawful for said corporation to construct its railroad over any lands belonging to other persons, or over such rights of way or tracks of other railroads as aforesaid, upon paying or tendering to the owner thereof, or to his or her legally authorized representative, just and reasonable compensation for the right of way . . . .

<u>Id.</u> at § 1689(l).

---

[7]     The 1882 version of the statute controls, as the MGAR form deeds were executed between 1890 and 1894.

Plaintiffs argue that these provisions of the Georgia Code, incorporated by reference into the railroad's charter, reflect that Georgia balanced its grant of eminent domain to railroads with a corresponding limitation upon the interest a railroad could obtain when it acquires a right-of-way under this eminent domain authority.  Pls.' Mot. Summ. J. 11.  Specifically, Plaintiffs contend that the Georgia railroad incorporation statute coupled with Georgia common law necessarily prevented the railroad from obtaining a fee simple interest from the original grantors via any of the original conveyances and limited the railroad's property interest to an easement.  Id. at 10-16.

While the statute does not obviate the fundamental requirement that the Court examine the language of the original deeds, the Court affords the statute significant weight in interpreting these conveyances.  See Preseault II, 100 F.3d at 1534 ("The question of what estates in property were created by these turn-of-the-century transfers to the Railroad requires a close examination of the conveying instruments, read in light of the common law and [state] statutes . . . then in effect."); Hardy v. United States, 127 Fed. Cl. 1, 8 (2016).  As such, this contemporaneous statutory framework provides an important context for the Court's interpretation of the conveyances at issue. See Preseault II, 100 F.3d at 1536.

### The Strips and Gores Doctrine Does Not Limit the Railroad's Interest to an Easement

Plaintiffs offer another interpretive aid for construing the deeds at issue, arguing that, under Georgia common law, the doctrine of "strips and gores" prevents the creation of fee estates in strips used as rights-of-way, such that the original grantors could only have conveyed easements to the railroad.  Pls.' Mot. Summ. J. 14-15.  This Court, however, does not find that doctrine applicable in the context of determining what property interests were conveyed.

The "strips and gores doctrine" is a principle of interpretation used by courts to resolve ambiguities in deeds.  Under this doctrine, when a deed conveys land which is bounded by a road, railroad right-of-way, or stream, the boundary of the land is the centerline of the road, railroad right-of-way, or stream.  Fambro v. Davis, 348 S.E.2d 882, 884 (Ga. 1986).[8]  This canon of construction prevents the accidental creation of property interests in the "strips and gores" of land located between the edge of a parcel and the center of the road, railroad right-of-way, or stream that bounds the parcel, so that unproductive and valueless strips are not held by "detached ownership."  Id. (quoting Johnson v. Arnold, 18 S.E. 370, 372 (Ga. 1893)).  As the Supreme Court of Georgia has recognized:

> The rule avoids the undesirable result of having long, narrow strips of land owned by people other than the adjacent landowner.  Pindar asserts that this rule of construction also should govern the construction of deeds that designate a railroad right-of-way as a boundary.  This Court has, in fact, already applied it to language in a will to determine title to an abandoned railroad right-of-way.  We now adopt this rule for use in construing deeds that have as a boundary a railroad right-of-way.

---

[8]     Fambro was decided by the Supreme Court of Georgia, the state's highest appellate court. The Supreme Court of Georgia was created in 1835.  See Michael B. Terry, Symposium Article: Historical Antecedents of Challenges Facing the Georgia Appellate Courts, 30 Ga. St. U. L. Rev. 965, 968 (2014). A lower appellate court, the Court of Appeals of Georgia, was created in 1906, but the Supreme Court of Georgia could not review its decisions until 1916.  Id. at 969-70.

Descendants of Bulloch, Bussey & Co. v. Fowler, 475 S.E.2d 587, 589 (Ga. 1996).

Plaintiffs argue that the Fambro court "emphatically embrace[d] the strips-and-gores doctrine." Pls.' Mot. Summ. J. 15. While the "strips and gores doctrine" is alive and well in Georgia, the Fambro court did not apply the "strips and gores doctrine" to determine the nature of the property interest in the strip of contested land. In Fambro, the parties did not dispute that the railroad's right-of-way had reverted to the grantees in fee simple, and the Supreme Court of Georgia merely used the "strips and gores doctrine" to aid in determining the terminus of that fee interest, ultimately concluding it was the centerline of the right-of-way. 348 S.E.2d at 884. The "strips and gores doctrine" does not aid in ascertaining what property interest was conveyed; the doctrine only illuminates the boundary of the property interest granted.

**The Deeds at Issue**

Plaintiffs' claims in this case can be divided into three categories: the MGAR form deeds, the modified MGAR form deeds, and the Porterdale spur form deeds.[9]

### The MGAR Form Deeds

In construing deeds, the Court must examine these instruments in light of the Georgia statutes and common law at the time that the deeds were executed. Preseault II, 100 F.3d at 1534; Hardy, 127 Fed. Cl. at 8. Twenty-three deeds at issue in this case are preprinted forms that MGAR prepared and contain language that is substantively identical to that of the deed signed by S. B. Mixon in 1891.[10] Both the MGAR form deeds and the modified MGAR form deeds are listed in Appendix B. The Mixon deed,[11] a typical MGAR form deed, states:

No 40
S.61


*Right of Way Deed*
*From* S.B. Mixon
To
*Middle Georgia and Atlantic Railway Co.*


*Georgia*, Newton *County*

---

[9]     Plaintiffs also discuss in their papers the Henderson quitclaim deed and the Samuel Johnson Condemnation. However, Plaintiffs did not associate the Henderson quitclaim deed with any landowner's claims in their papers and do not mention this deed in the updated chart of claims the parties filed on February 17, 2017. As such, the Court does not analyze the Henderson deed. The Court considers the Samuel Johnson Condemnation in the context of MGAR deeds that the parties agree convey easements.

[10]     Eight additional deeds, described as modified MGAR form deeds, are variations on the preprinted forms and discussed separately below.

[11]     Italics denote typewritten text, and regular font denotes handwriting. This tracks Plaintiffs' transcription of the deeds.

*Left for record* at 10 am 1st day of
June, 1891 *and recorded in*
*Book X folio* 392-393. 16th
*Day of* June 1891.
James B. Davis, *Clerk*

*Right of Way Deed*
*Georgia*, Newton *County*

 *This indenture witnesseth: that the undersigned* Mrs. S.B. Mixon *has bargain, sold and conveyed to the MIDDLE GEORGIA & ATLANTIC RAILWAY COMPANY, a corporation, of said State, the following property: a strip of land situated in the* 462nd *District of* Newton *County*, twenty five *feet wide, the same being* twelve and a half feed [sic] on *each side the centre line of said Railroad,* <u>*for a right of way of said Railroad, or for any other use in the discretion of said Company*</u>, *and more particularly described as follows*:

 <u>Along the line of recent survey made by said Middle Georgia & Atlantic Railway Company</u>.

 *The Consideration of this Deed is the sum of* two hundred and fifty *dollars paid by said Company to the undersigned before execution of these presents.*

 *To have and to hold the said described land, with its members and appurtenances unto the said Middle Georgia & Atlantic Railway Company, its successors and assigns, forever. And the said* Mrs. S.B. Mixon *will forever warrant and defend the title hereby conveyed to the said Railroad Company against any and every person whatsoever.*

 *In witness whereof, the said* Mrs. S.B. Mixon *has hereunto set her hand and affixed her seal, and delivered these presents, this the__ day of* April, 1890.

 *Signed, sealed and delivered in presence of:*
- S.O. Wright
- GMT Besard JP
- Mrs. S.B. Mixon [L.S.]

*Ref. No.* 40
*DEED*
*From*
S.B. Mixon
*To*
*Middle Ga & A.Ry Co.*
*Dated*
April 1890
Newton *County*
462 G.M. *District*
*Lot No.*
*Recorded* June 16, 1892
*Book* X *Folio* 392-93

*Description of Conveyance in Brief:*

21

Right of way 25 feet
12 and ½ feet on each side

I judge to be in the
City of Covington

Joint Not. Transcribed Conveyances Ex. 1, at 10 (emphasis added).

According to Plaintiffs, the Mixon deed and the substantially similar MGAR form deeds granted the railroad an easement limited to the operation of a railroad, and once that operation ceased, ownership reverted to Plaintiffs in fee.  Plaintiffs point to the following features of these MGAR form deeds to argue that these deeds gave the railroad an easement:

- The instruments were described as "Right Of Way deeds."

- The purpose of the grants was stated to be "for a right of way of said railroad."

- Some deeds described the location of the right-of-way as passing "through" or "across" the grantor's land.

- The deeds were prepared by MGAR and thus should be construed against the drafter.

- Some deeds recited nominal consideration.

Pls.' Mot. Summ. J. 18.

Defendant focuses on the following elements to argue that the MGAR form deeds conveyed a fee simple interest in the railroad corridor:

- The habendum clause stated that the railroad and its "successors and assigns" were to have and to hold this land "forever."

- The deeds stated that they bargained, sold, and conveyed a "strip of land" rather than a right-of-way.

- The description of the strip of land stated that it was for a right-of-way of the railroad, or for "any other use" in the discretion of the railroad.

- The grantor would "forever warrant and defend the title hereby conveyed" to the railroad company.

- Many deeds recited substantial consideration, and the use of nominal consideration in some instances was not determinative under Georgia law.

Def.'s Mot. Summ. J. 21, 24-25.

In Presault II, the Court concluded that the conveyances must be interpreted considering the state statute and the fact that the railroad exercised its eminent domain power prior to executing the deeds.  Preseault II, 100 F.3d at 1354-55, 1357.  The Federal Circuit explained:

The references to the purposes of the Railroad, and to the provisions of the Act incorporating it, are to 1898 Vermont Acts No. 160, entitled "An Act to Incorporate the Rutland-Canadian Railroad Company," approved November 4, 1898. That Act provided that certain named individuals

> constituted and created a body politic and corporate by the name of the "Rutland-Canadian Railroad Company," for the purpose and with the right of constructing, maintaining and operating a railroad for public use in the conveyance of persons and property by the power of steam or otherwise . . . . Said Corporation shall have and enjoy the right of eminent domain . . . [and] may . . . take . . . such real and personal estate as is necessary or proper in the judgment of such corporation, for the construction, maintenance and accommodation of such railroad . . . as the purposes of the corporation may require . . . .

1898 Vt. Acts No. 160, § 1. The Act goes on to state that the corporation shall have all privileges and rights given by the general law to railroad companies for acquiring title and possession to property covered by its location.

*      *      *

> On balance it would seem that, consistent with the view expressed in Hill, the [grant] retained its eminent domain flavor, and the railroad acquired only that which it needed, an easement for its roadway. Nothing the Government points to or that we can find in the later cases would seem to undermine that view of the case; the trial court's conclusion that the estate conveyed was an easement is affirmed.

Id. at 1534-35, 1537 (alterations in original) (internal citation omitted). In the referenced case, Hill v. Western Vermont Railroad Co., the Supreme Court of Vermont found that where a railroad acquires land, either through eminent domain or by purchase from the landowner, "there is this implied limitation . . . that the company will take only so much land or estate therein as is necessary for their public purposes." 32 Vt. 68, 76 (1859).

Here, as in Preseault II, the governing state statute strongly supports an interpretation that the MGAR form conveyances granted the railroad an easement, not a fee simple. Section 1689(i) of the Georgia Code provided:

> [A corporation] shall be empowered, first, to cause such examinations and surveys to be made of the proposed railroad as shall be necessary to the selection of the most advantageous route, and for such purposes to be empowered by its officers, agents, servants or employees, to enter upon the land or water of any person for that purpose. Second, to take and hold such voluntary grants of real estate and other property as may be made to it, to aid in the construction, maintenance and accommodation of its road, but the real estate received by voluntary grant shall be held and used for the purpose of such grant only. Third, to purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its road, and the stations, wharves, docks, terminal facilities, and

23

<u>all other accommodations necessary to accomplish the object of its incorporation</u>, and to sell, lease or buy any land <u>necessary for its use</u>.

Ga. Code Ann. § 1689(i) (emphasis added).

Reading the three enumerated parts of the governing Georgia statute together, the legislature expressed its intention to: first, authorize the railroad to "survey" the grantors' property and identify the land that would be taken for the railroad under eminent domain, second, limit the railroad's acquisition of property rights to be "used for the purpose of such grant only," and third, limit the railroad's purchase of property necessary for the construction and maintenance of the railroad and its stations.  Ga. Code Ann. § 1689(i).  These statutory limitations are not consistent with a conveyance of the property to the railroad in fee simple.  The language of the MGAR form deeds falls squarely within the first limitation of the Georgia statute as these deeds describe the property conveyed as "[a]long the line of recent survey made by said Middle Georgia & Atlantic Railway Company."  Because the language in the MGAR form deeds referenced a "survey" of the grantors' property, these instruments were executed in the context of the railroad having exercised its eminent domain power, and having surveyed and located the railroad corridor across the grantor's land.

The language of the deed also comports with the second statutory limitation expressly restricting the estate given to the railroad to be used for the purpose of the grant only, i.e. railroad purposes.  The statute limited the railroad to "take and hold such voluntary grants of real estate and other property as may be made to it to aid in the construction, maintenance and accommodation of its road," and continued that "the real estate received by voluntary grant shall be held and used for the purpose of such grant only."  <u>Id.</u>

The third limitation in the authorizing statute further supports an interpretation that these deeds conveyed easements limited to railroad use - - the railroad could only purchase such property "as may be necessary for the construction and maintenance of its road" and "buy any land necessary for its use," i.e. railroad use.  <u>Id.</u>  In short, construing the MGAR form deeds in the context of this statute requires an interpretation that the railroad was granted an easement limited to the use of the land for railroad purposes.

The language of the MGAR form deeds themselves contain other hallmarks of an easement conveyance.  The forms were titled "Right of Way" Deed.  In describing the land conveyed, the deeds reiterated that the strip of land was "for a right of way of said railroad or for any other use in the discretion of said Company" dictating that the conveyance was for railroad use or other use by the railroad company - - not an outright grant of the property.

The language granting the railroad the right-of-way "for any other use" in its discretion does not authorize a purpose unrelated to railroad use.  In <u>Duggan v. Dennard</u>, 156 S.E. 315, 316 (Ga. 1930), the Supreme Court of Georgia held that a grantor conveyed an easement, and not fee title, in a deed that stated:

That the said R. M. Dennard, for and in consideration of the sum of one & 0/100 Dollars . . ., has bargained and sold and by these presents do hereby bargain sell remise release and forever quitclaim to the said Hawkinsville and Florida Southern Railway Company, its successors or assigns, all the right, title interest, claim and

demand which the said R. M. Dennard has in or to the following described property, to wit: The right of way upon which a railroad has been located by said Railway Company on lot of land number 85 in the 5th district of said county and State which may be traversed by said railroad, said right of way to be one hundred feet wide and to extend fifty feet on each side from the center of the road-bed of said railroad, with all the rights, members and appurtenances to the said property in anywise appertaining and belonging. To have and to hold the said described property unto the said Hawkinsville and Florida Southern Railway Company, its successors or assigns, so that neither the said R. M. Dennard, nor heirs, nor any other person or persons claiming under him shall at any time have, claim, demand any right, title, or interest in or to the aforesaid described property, or its appurtenances. <u>The property hereinbefore described and herein conveyed to be used by the said party of the second part in such manner as it may deem proper in the construction and equipment of its railroad from the Town of Pitts, Wilcox County, to the City of Hawkinsville, Pulaski County, Ga., or such other points as said party of the second part may hereafter elect and for all other purposes.</u>

<u>Id.</u> at 315 (emphasis added).  Even though in its final sentence quoted above, the <u>Dennard</u> deed permitted the railroad to use the land conveyed "for all other purposes," the Supreme Court of Georgia determined that this deed conveyed an easement to the railroad, reasoning:

> [T]he addition of the last-quoted sentence could not have been for the purpose of adding to a complete title to the land embraced in the grant. It was not necessary for this purpose, but, construed with the statement that Dennard was conveying only a right of way and the selection of the words "to be used" in the qualification to the habendum, it seems clear that a reversion of the possession to the grantor or his heirs or successors in title was in the contemplation of the parties. <u>The use of the language last quoted, to our minds, clearly denotes that it was not the intention of the grantor that his lot of land should be aliened in fee, but that it should be used only for the purpose of the construction and equipment of the named railroad.</u> The words "for all other purposes," construed with its associate language, does not extend further than to include all other purposes "proper in the construction and equipment" of the named railroad.

<u>Id.</u> at 317 (emphasis added).  Similarly, the MGAR form deeds denoted that the land was to be used only for railroad purposes, and the phrase "any other use in the discretion of said Company" is properly construed to mean such other purposes "proper in the construction and equipment" of the railroad - - not a grant of a fee interest.

This Court recognizes that additional language in the MGAR form deeds could, read in isolation and divorced from the context of the governing statute, suggest conveyance of a fee simple.  In particular, the deeds purport to convey the "strip of land" to the railroad and its successors and assigns "forever."  Nonetheless, other language of the deed and its title indicates that a "right of way" was being conveyed "for railroad use."  This deed must be read in the context of the railroad's recent exercise of eminent domain and the Georgia Code's mandate that the estate received by the railroad was "to aid in the construction, maintenance and accommodation of its road," and to "be held and used for the purpose of such grant only."  Ga. Code Ann. § 1689(i).

The Supreme Court of Georgia's decision in <u>Atlanta, B. & A. Ry. Co. v. Coffee County</u> 110 S.E. 214 (Ga. 1921) supports a finding that the MGAR form deeds conveyed an easement. The deed in <u>Coffee County</u> was similar to the MGAR form deeds and stated:

> One hundred feet in width of right of way, that is to say, fifty (50) feet on each side of the center of the road bed of the present Offerman & Western Railroad, as now located, through that portion of lot of land number five hundred and fourteen (514) in the Sixth district of Coffee county, Georgia, now owned by said party of the first part; said one hundred feet in width of right of way being more fully described by a sketch or plat of same hereto attached and made a part of this deed, and referred to for further identification <u>of the railroad right of way hereby conveyed . . . To have and to hold the said bargained and described right of way unto the said party of the second part, its successors and assigns, forever in fee simple," with covenant of general warranty.</u>

<u>Coffee Cty.</u>, 110 S.E. at 215 (omission in original) (emphasis added).

Even though the deed in <u>Coffee County</u> purported to convey a right of way "in fee simple" to the railroad, the Supreme Court of Georgia found that the words "forever in fee simple" were not controlling, since they referred to the duration of enjoyment of the easement. <u>Id.</u> at 215 (internal citations omitted). Further, the Supreme Court of Georgia held that the use of the term "right of way" in this instance was not "a descriptive term only" and that the deed, taken as a whole, showed that the intention of the parties was to convey an easement. <u>Id.</u>; <u>accord</u> <u>Jackson v. Sorrells</u>, 92 S.E.2d 513 (Ga. 1956) (finding that deed granting "parcel of land to the said Railroad Company, for Railroad purposes, forever in fee simple" that also reserved the grantor's right of cultivation, conveyed an easement).

Based on the analysis above, the Court finds that the MGAR form deeds conveyed easements to the railroad and grants summary judgment on liability to the following Plaintiffs on the following claims: Donald R. and Lois G. Griffin (Claim No. 24), Ulkafaw Corporation, D/B/A Windy Hill Tree Farm (Claim No. 25), Bradford S. and Robert S. Jones (Claim No. 28), City of Covington (Claim Nos. 35 and 55), Greyland Real Estate Investments, Inc. (Claim Nos. 41 and 43), Robert L. Faulkner (Claim No. 42), Dennis R. and Judy M. Hooten (Claim No. 45), Gail W. Carter (Claim No. 47), Edward Phillip Stone (Claim No. 48), Marion P. and J. JoAnn Restivo III (Claim No. 54), Willard Mastin (Claim No. 135), James W. Johnson (Claim No. 184), William R. and Patricia E. Crawford III (Claim No. 202), Maderriel S. Milford (Claim No. 214), W.D. Ballard and Nancy Mock (Claim No. 216), Steven T. and Rhonda K. Roule (Claim No. 217), Catherine

Ann Jones (Claim No. 236), Perry Charles Lunsford (Claim No. 239), and Rick and Nancy Mock (Claim Nos. 275, 276, and 277).[12]

### The Modified MGAR Form Deeds

Four of the MGAR deeds vary from the standard template in their description of the conveyed land: the Lee deed, the J.C. Anderson deed, the Belcher deed, and the M.J. Anderson deed. The parties do not agree on what type of interest is conveyed by these deeds. Four additional MGAR deeds also vary from the standard template in their description of the conveyed land, which the parties agree convey an easement: the A.E. Dearing deed, the J.J. Dearing deed, the Brown deed, and the 1886 Skinner deed. The Court addresses each of these deeds in turn.

### The W.B. Lee Deed

The Mixon deed, representative of the standard MGAR form deeds, described the conveyance as follows:

> *a strip of land situated in the* 462nd *District of* Newton *County*, twenty five *feet wide, the same being* twelve and a half feed [sic] on *each side the centre line of said Railroad, <u>for a right of way of said Railroad, or for any other use in the discretion of said Company,</u> and more particularly described as follows*:
>
> Along the line of recent survey made by said Middle Georgia & Atlantic Railway Company.

Joint Not. Transcribed Conveyances Ex. 1, at 10. (emphasis added).

In addition to the language in the other MGAR form deeds, the June 2, 1894 deed between W.B. Lee and MGAR included the following description of the conveyance as:

> A strip of land located in the 462nd G.M. District of Newton County <u>the with [sic] to be, what is necessary for Railroad purposes for said Railroad as a right of way</u>, more particularly assembled as follows- This right of way is in the City of Covington, and in the south eastern portion of the City limits, passing through the eastern portion of the lot bought by said Wm. B. Lee from Jos L. Sibley.

Joint Not. Transcribed Conveyances Ex. 1, at 1 (emphasis added). Unlike the other MGAR form deeds, the Lee deed does not describe the land using objective numerical measurements of width, but specifies the width as that "necessary for Railroad purposes for said Railroad as a right of

---

[12]    The parties disagree as to what original deed(s) apply to the parcels of Plaintiffs Robert Faulkner (Wright deed or Usher and Wright deeds), Greyland Claim No. 43 (Wright deed or Usher, Henderson, and Wright deeds), W.D. Ballard and Nancy Mock (Jackson deed or Jackson and Hays deeds), and Steven T. and Rhonda K. Roule (Jackson deed or Jackson and Hays deeds). Defendant proposed the Usher, Henderson, and Hays deeds while Plaintiffs proposed the Wright and Jackson deeds. Because the language of all these potentially applicable deeds is similar to the form MGAR deed in title, land description, and consideration, the Court finds that no matter which deeds applied to these parcels, the interest conveyed by all five deeds would have been the same - - an easement.

way."  Id.  This linking the width of the conveyed property to railroad use strongly indicates that the land was to be used for railroad purposes and reflects the grantor's intent to convey an easement.

The Lee deed also contained the following provision:

We the undersigned a committee of arbiters selected by a citizens Committee of the City of Covington and W.B. Lee to assess the damage sustained by him on account of the right of way of the Middle Ga & Atlantic Railroad passing through his property in the said City, after examination and deliberation award him damages to the amount of one hundred and fifty dollars ($150.$^{00}$).

Id. at 2.

The language in the deed stating that the "committee of arbiters" assessed and awarded damages "on account of the right of way of the Middle Ga & Atlantic Railroad" passing through Mr. Lee's property indicated the grant of an easement with the fee simple remaining with the grantor, not an outright conveyance to the railroad.  This language referencing the selection of a committee of arbiters to "assess the damage" sustained by Mr. Lee as a result of the location of the rail corridor provides additional support for concluding that an easement was conveyed, as it suggests that the land was acquired through condemnation.  See Ga. Code Ann. § 1689(1) (providing that where a railroad is unable to obtain title to land or a right-of-way, it may "construct its railroad over any lands belonging to other persons" upon paying "just and reasonable compensation" and that the "damage done" to the property "sought to be condemned," was to be determined by a committee of citizens from the community).

Based on the description of the conveyance as a piece of land "the width to be, what is necessary for Railroad purposes for said Railroad as a right of way" and the language providing that "a committee of arbiters selected by a citizens Committee of the City of Covington and W.B. Lee to assess the damage sustained by him on account of the right of way of the Middle Ga & Atlantic Railroad passing through his property," the Court finds that the Lee deed conveyed an easement.  As such, the Court grants summary judgment as to liability to the Plaintiffs Marcia A. Huguelet (Claim No. 88) and the City of Covington (Claim No. 278).

### The April 22, 1890 J.C. Anderson Deed

The standard MGAR form deeds, executed between 1890 and 1894, in substance described the land as being:

Along the line of recent survey made by said Middle Georgia & Atlantic Railway Company.

See, e.g., Joint Not. Transcribed Conveyances Ex. 1, at 10.  By contrast, the J.C. Anderson deed, executed June 1, 1891, described the land conveyed in its entirety as:

 To be determined according to the survey made for said road, provided a depot or station is located at this point.

28

Joint Not. Transcribed Conveyances Ex. 1, at 28.  As with the MGAR form deeds, this deed must be construed in accordance with the Georgia Code.  Because the deed references a survey of the land and contains the additional language referencing railroad buildings - - a depot or station - - this deed indicates that the land was to be used for railroad purposes and conveyed an easement to the railroad.

### The August 22, 1892 Belcher Deed

The Belcher deed, executed on June 1, 1891, added the following description of the land conveyed to the description in the MGAR form deeds:

> Along a recent survey made by the Rail Road through my land on the East side of Alcovy River **-** This deed made upon the following conditions, is that sewer pipes sufficient size to carry water from bottom lands **-** under road bend - And that a station be located D. Andersons.

Joint Not. Transcribed Conveyances Ex. 1, at 26; Ex. 2, at 24.[13]  As in the J.C. Anderson deed, the reference to the survey read in the context of the Georgia statute bolsters the conclusion that this modified form MGAR deed conveyed an easement.  The condition regarding sewer pipes and a station does not alter the estate conveyed.  Therefore, the Court construes the Belcher deed as conveying an easement to the railroad.

### The April 28, 1890 M.J. Anderson Deed

The M.J. Anderson deed, executed on April 22, 1890, described the land conveyed as:

> Along a recent survey of said Rail Road through my entire land on the East Side of Alcova River.  This includes all damages to crops grown & c on said land.

Joint Not. Transcribed Conveyances Ex. 2, at 29.  The reference to the survey read in the context of the Georgia statute again bolsters the conclusion that this modified MGAR form deed conveyed an easement.  So too, the provision that the railroad was to be responsible for all damages to crops grown on the grantor's land further indicates that the estate conveyed was an easement with the underlying fee remaining with the grantor.  Therefore, the Court construes the M.J. Anderson deed as conveying an easement to the railroad.

The J.C. Anderson, Belcher, and M.J. Anderson deeds govern the claims of three Plaintiffs - - Mary Jane Dixon (Claim No. 186), Betty Jean Pickens (Claim No. 187), and Wendy M. and Robert L. Hankins (Claim No. 188).  As such, the Court grants summary judgment to Plaintiffs as to these claims.[14]

---

[13]     The parties' transcriptions of this deed contain slight, immaterial differences.

[14]     The parties differ as to which of these three deeds apply to the Dixon and Pickens parcels. However, as the Court has construed all three deeds - - J.C. Anderson, Belcher, and M.J. Anderson - - as conveying easements, the Court need not resolve that dispute.

## Modified MGAR Form Deeds the Parties Agree Convey Easements

The parties agree that the April 30, 1890 A.E. Dearing deed, the April 4, 1890 J.J. Dearing deed, the August 22, 1892 Brown deed, the May 7, 1890 Stanton deed, the May 25, 1886 Skinner deed, and the land used by the railroad without any deed, referred to as the "Samuel Johnson Condemnation," conveyed easements to the railroad. Def.'s Mot. Summ. J. 34; Def.'s Reply 20. Because the Court is not bound by the parties' stipulations on questions of law, the Court has analyzed each deed and determined that they conveyed easements.[15]  As such, the Court grants summary judgment as to liability in favor of the following Plaintiffs covered by these deeds and the Samuel Johnson Condemnation: Joseph J. Marino (Claim No. 105), the City of Covington (Claim Nos. 123 and 141),[16] Reginald F. and Yvonne I. Henry (Claim No. 125), David and Vivian Alcantara (Claim No. 140),[17] Sam B. Hay, Jr. (Claim No. 142), Winston and Patricia Munroe (Claim No. 162), Jacinda M. Rentrope (Claim No. 164), Sheylah Alcide (Claim No. 168), Isaac Semador (Claim No. 171), Elaine H. Pulliam (Claim Nos. 173 and 280), Lester M. and Connie M. Castleberry (Claim Nos. 175 and 177), Robert M. Zenko (Claim No. 193), and Ricky Joe and Phyllis S. Hackett (Claim No. 197).[18]

## The Later Deeds

Two deeds dating from the 1920s relate to two parcels corresponding to the City of Covington Claim Nos. 32 and 34, the Weaver deed and the Turner deed. These deeds purport to be later conveyances of land originally conveyed by the Brown deed. The Court addresses each in turn.

---

[15]     Because deed interpretation is a question of law, not fact, this Court is not bound by the parties' stipulation as to whether or not a particular deed conveyed an easement. Whispell Foreign Cars, Inc. v. United States, 97 Fed. Cl. 324, 334 (2011); Boeing Co. v. United States, 75 Fed. Cl. 34, 43 (2007); Tr. 13-14, McCarty et al. v. United States, No. 14-316L (Fed. Cl. June 20, 2016).

[16]     The parties agree that the Samuel Johnson Condemnation applies to the parcel representing the City of Covington's Claim No. 141, but disagree as to whether or not the Johnson deed also applies. As the Court has construed the Johnson deed, one of the MGAR form deeds, as conveying an easement, the Court need not determine whether the Johnson deed applies to this parcel. Similarly, the parties agree that the Samuel Johnson Condemnation applies to the parcel of Plaintiff Joseph J. Marino, but disagree as to whether or not the Hight deed also applies. Again, the Court need not resolve this dispute as it has construed the Hight deed, an MGAR form deed, as conveying an easement.

[17]     In its supplemental briefing, Defendant requested leave to supplement the record with a parcel map that applies to Claim No. 140. Def.'s Resp. 4 (ECF No. 74). Plaintiffs do not oppose this request. Id.  The Court accepts the map attached as Exhibit 2 to Defendant's Response for inclusion in the summary judgment record.

[18]     Defendant argues that both the May 25, 1886 Skinner deed and the Smith deed, an MGAR form deed, apply to this parcel. Because the MGAR form deeds also conveyed an easement, the Court need not resolve which deed(s) applied.

**The Weaver Deed**

With respect to the City of Covington's Claim No. 32, the parties agree that the Brown deed, which is a modified MGAR form deed that conveys an easement, governs the underlying parcel. However, Plaintiffs do not agree with Defendant's contention that the Weaver deed also applies to this parcel. Defendant argues:

> [a]lthough the Brown Y/135 deed conveys an easement, no taking has occurred relative to that parcel. In 1927, a subsequent landowner conveyed land widening the corridor at the site of the Brown conveyance. The Weaver deed is a conveyance in fee. Therefore, there is no takings liability in relation to the subject City of Covington parcel.

Def.'s Reply 20 n. 6 (ECF No. 43).

The Weaver deed, which conveyed a property interest to the Central of Georgia Railroad Company, the successor in interest to MGAR, in 1927, states:

> *THIS INDENTURE made and entered into this* 26th *day of September, 1927, between* R. I. WEAVER, *of said State and County, party of the first part, and CENTRAL OF GEORGIA RAILWAY COMPANY, a corporation created by and existing under the laws of the State of Georgia, party of the second part,*
>
> *WITNESSETH:*
>
> *That the party of the first part, for and in consideration of the sum of Twenty-five Hundred Dollars ($2,500) to him in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, Has granted, bargained, sold, and conveyed, and by these presents Does grant, bargain, sell, and convey unto the party of the second part, all those two tracts or parcels of land situate, lying and being in the City of Covington, Newton County, Georgia, described as follows:*
>
> \*     \*     \*
>
> *The two above described parcels of land containing collectively Eighty-seven hundredths (0.87) of an acre, more or less, and shown colored red on blue print of Central of Georgia Railway Company's Plan No. 9972 hereto attached and made a part hereof.*
>
> *Also the right and privileges to cut ditches on the north and south side of the property herein conveyed from the east to the west property line of the grantor, as shown in black on the attached print.*
>
> *TOGETHER WITH ALL AND SINGULAR the rights, members, hereditaments and appurtenances thereunto belonging or in any wise appertaining.*

> *TO HAVE AND TO HOLD the said lots, tracts, or parcels of land with all and singular the rights, members and appurtenances thereunto appertaining unto the said party of the second part, their successors and assigns, in fee simple forever.*
>
> *AND LASTLY, the said party of the first part, and his heirs, the said above described lots, tracts, or parcels of land and premises, unto the said party of the second part, and its successors and assigns, against himself, the said party of the first part and his heirs, and against all and every other person or persons whomsoever shall and will warrant and forever defend.*
>
> *IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal the day and year first above written.*

Id. Ex. CC, at 3-5 (ECF No. 43).

The Court finds that the Weaver deed conveyed a fee simple to the railroad.  Unlike the MGAR form deeds, the Weaver deed conveyed "two tracts or parcels of land" outright with no limitation on the property's use.  See Johnson v. Valdosta, M. & W.R. Co., 150 S.E. 845, 847-48 (Ga. 1929) (finding that the railroad was granted a fee simple because there was an outright conveyance of land).  The Weaver deed nowhere mentions the term "right of way."  Compare id. Ex. CC with Joint Not. Transcribed Conveyances Ex. 1, at 10.  Additionally, the Weaver deed makes no reference to the railroad's exercise of eminent domain through its survey of the land.  Nor does this deed require that the land be used for railroad purposes.  Finally, the consideration granted by this deed, $2500, is substantially larger than the amount of consideration in any of the MGAR form deeds.

Each party submitted a map purporting to show the parcel representing the City of Covington's Claim No. 32, and the parcel's relation to the land governed by the Brown and Weaver deeds.  Based on the maps provided by the parties, it is unclear whether, as Plaintiffs argue, only the Brown deed applies to the parcel representing City of Covington Claim No. 32, or whether, as Defendant argues, both the Brown and the Weaver deeds apply.  It is also unclear whether Defendant is arguing that the Weaver deed applies to the entire parcel, or a portion of the parcel.



Def.'s Reply Ex. CC, at 9 (ECF No. 43).  The above map, provided by Defendant, indicates the parcel conveyed by the Weaver deed with an arrow and the parcel conveyed by the Brown deed with a star.  Id.



Brannon Decl. Ex. 1 (ECF No. 37).  In the above map, provided by Plaintiffs, the portion labeled 19 corresponds to the Brown deed; the portions labeled 20 and 21 correspond to the Weaver deed. Id.

Given the issues as to which deeds apply to this parcel, the Court requires evidence on the preparation and interpretation of the maps portraying this parcel.  As such, the Court denies summary judgment to both parties on the claim of the City of Covington (Claim No. 32).

### The Turner Deed

The parties agree that both the Brown deed and the Turner deed govern the parcel underlying the City of Covington's Claim No. 34.  The Brown deed conveyed an easement, as it expressly conveyed a "Right of way sufficient for Road Bed and trestle purposes Covington." Joint Not. Transcribed Conveyance Ex. 1, at 66.  The Brown deed stated that the strip of land conveyed was for a railroad right of way and contained a condition that a trestle of more or less 700 feet be maintained.  The railroad contemplated filling the trestle and leaving an opening of 208 feet.  However, according to the later Turner "Contract and Deed," the Grantor would not agree to convey his land under that condition, and instead provided that the length of that fill was to have a longer opening - - 247 feet - - to prevent overflow of a creek that the trestle crossed.

The Turner deed states:

*This Contract and Deed entered into this* Dec 21, *1928 between* N.S. *TURNER of Newton County, Georgia, hereinafter called the Grantor, and CENTRAL OF GEORGIA RAILWAY COMPANY, a Georgia corporation, hereinafter called the Railway Company.*

*WITNESSETH*

*1. The Railway Company now owns a trestle approximately 700 feet long which crosses Dried Indian Creek in Covington, Newton County, Georgia. The Grantor owns certain land adjoining said trestle on the north, which land is a part of the land formerly owned by I. W. Brown, who conveyed the land on which said trestle is now located to the Railway Company's predecessor in title, Middle Georgia & Atlantic Railway Company, by deed dated August 22, 1892, and recorded in the office of the Clerk of the Superior Court of Newton County in Book Y, Folio 135, upon condition that a trestle of 700 feet more or less should be maintained thereon. The Railway Company desired to fill part of said trestle on the east of said Dried Indian Creek so as to leave only about 208 feet of trestle, and for that purpose desired to secure the Grantor's land hereinafter described, but the Grantor was unwilling to convey said land, or to have said trestle filled in accordance with the Railway Company's plans, for the reason that he feared that said contemplated fill would be so close to Dried Indian Creek that it would cause the Grantor's lands to the north of said fill to be overflowed. The parties hereto have therefore agreed as follows:-*

*2. Instead of filling said trestle as originally contemplated so as to leave an opening of only approximately 208 feet, it will be so filled by the Railway Company so as to leave a total opening of at least 247 feet, measured from the present west end of said trestle. The trestle, as it will exist after the fill herein provided for is completed, is shown in yellow on the blue print of Central of Georgia Railway Company No. 128-54/9972, which is attached to and made a part hereof. The Railway Company will construct and maintain a ditch on the Grantor's land in the approximate location shown in black on the said blue print.*

*3. In consideration of the foregoing and of the sum of One Dollar ($1) to him in hand paid at and before the execution and delivery of these presents, the Grantor hereby grants, bargains and conveys unto the Railway Company, for the purpose of constructing a portion of said fill thereon, a tract or parcel of land in Covington, Newton County, Georgia, beginning at a point which is on the northern right of way line of the Railway Company 2,233 feet west of Mile Post 3-251, and 20 feet north of the center of the Railway Company's main line track and running thence westwardly parallel to and 20 feet distant northwardly at right angles from the center of the aforesaid main line track for 245 feet, more or less, to a point; thence northwardly along the westerly property line of the said N.S. Turner for 35 feet, more or less to a point; thence easterwardly parallel to and 30 feet from the northern right of way line of the Railway Company for 265 feet, more or less, to a point; thence southwardly for 30 feet, more or less, to the point of beginning; the*

*above described parcel containing .18 of an acre, more or less, and being shown colored in red on the attached blue print.*

> *TOGETHER WITH ALL AND SINGULAR the rights, members, hereditaments and appurtenances thereunto belonging or in any wise appertaining.*

> *4. TO HAVE AND TO HOLD unto the Railway Company, its successors and assigns, in fee simple forever and not as a mere right-of-way.*

> *IN WITNESS WHEREOF the Grantor has executed these presents in Newton County, Georgia, and the Railway Company has caused these presents to be executed by its legally authorized officers in Chatham County, Georgia; all being done in duplicate on the day and year first above written.*

Def.'s Resp. Ex.1, at 4-6 (ECF No. 74) (emphasis added).

The Turner "Contract and Deed," describes "a tract or parcel of land in Covington, Newton County, Georgia, beginning at a point which is on the northern right of way line of the Railway Company 2,233 feet west of Mile Post S-251 . . . ." Id. at 5. The blueprint attached to the Turner deed, which purports to show the trestle, the area to be filled, and a ditch to be constructed and maintained by the railroad on the grantor's land, is reproduced below:



Id. at 6.

The portion of Defendant's map below labeled with the arrow corresponds to the Turner deed and the portion of Defendant's map labeled with the star corresponds to the Brown deed. Id. at 2.



The portion of Plaintiffs' map below labeled 22 corresponds to the Turner deed; the portion of Plaintiffs' map labeled 19 corresponds to the Brown deed.  Brannon Decl. Ex. 1 (ECF No. 37).



In the parties' February 17, 2017 chart of claims, Defendant states that the Turner deed conveys a fee, but does not explain its basis for that conclusion, nor does it argue how the Turner deed could purport to convey a fee, when the predecessor Brown deed conveyed an easement, and the Turner "Contract and Deed" did not purport to alter or expand the estate granted to the railroad by the Brown deed. The Turner "Contract and Deed" focused on the filling of the trestle and the length of the opening to prevent creek overflow. Plaintiffs offer no argument on the type of interest the Turner deed conveyed. Neither party has addressed whether the blueprint appended to the Turner deed illuminates the location of the trestle described in the Brown and Turner deeds, or the legal import, if any, of the title of the Turner instrument as "Contract and Deed."

The parties have not interpreted the Turner "Contract and Deed" in light of its predecessor deed, the Brown deed, and there are genuine issues of material fact regarding the property interest conveyed by these deeds. As such, summary judgment is denied to both parties as to the City of Covington's Claim No. 34.

### The Porterdale Spur Deeds

Plaintiffs City of Covington (Claim No. 2), Clark's Grove LLC (Claim Nos. 7 and 18), Elizabeth S. Hutchins and Jack Lee Meadors, Jr. Trust (Claim No. 9), Helen J. Hester (Claim No. 13), Clark's Grove Neighborhood Association, Inc. (Claim No. 16), and Shirt Factory, LLC (Claim No. 17) rely on six pre-printed form deeds created in 1899, by the Central of Georgia Railroad Company for the construction of the Porterdale spur. These deeds are the Peek, Beebe,[19] Webb,

---

[19]     The parties appear to have submitted different documents as the Beebe deeds.  Compare Joint Not. Transcribed Conveyances Ex. 1, at 50-51 with id. Ex. 2, at 75-76.  However, both of these documents are substantively identical to the other Porterdale deeds.

Porter, Clark, and N.C. Lee deeds.  Pls.' Mot. Summ. J. Exs. Z-EE.  Plaintiffs argue that the Porterdale deeds conveyed an easement for railroad purposes only, as they share the following characteristics with the MGAR form deeds the Court has construed as conveying easements:

- Description of the instrument as a right-of-way deed;

- Description of the right-of-way as passing through or across the grantor's land;

- Use of form deeds prepared by the railroad; and

- Nominal consideration.

Plaintiffs contend that the Porterdale deeds had other features that show that an easement was conveyed to the railroad, such as a description of the land conveyed as a tract or strip of land and restrictions on the railroad's use of the property in the deed.

Defendant argues that the Porterdale deeds conveyed a fee simple to the railroad because the Porterdale deeds contained a habendum clause stating that the railroad and its successors were to have and to hold the land forever, the conveyance was for a "strip of land" rather than a right of way, and the grantor would "forever warrant and defend the title hereby conveyed" to the railroad company, and unlike the MGAR form deeds, the Porterdale deeds do not contain the words "right-of-way."

The Porter deed, typical of these form deeds, states in full:

*Ref No.* 96
*DEED*
*From*
O. L. Porter
*To*
Central of Georgia Railway Company
*Dated*
April 11, 1899
Newton *County*
*District*
*Lot No.*
*Recorded* May 22, 1899
*Book* 2 *Folio* 593


*Description of Conveyance in Brief*
Porterdale Spur

*State of* Georgia
*County of* Newton
     *THIS INDENTURE, Made the* 11th *day of* April *in the year of ou[r] Lord one thousand eight hundred and* ninety nine *between* O L. Porter *of the County of* Newton *of the first part, and the Central of Georgia Railway Company of said State, of the second part:*

*WITNESSETH: That the said party of the first part, for and in consideration of the sum of* Fifty 00/00 *Dollar*s *in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledge, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said part of the second part, and its successors and assigns, <u>a tract of strip of Land</u>, One Hundred (100) feet wide, the same being* Fifty (50) *feet on each side of the center line of said railway. Said tract or strip of Land for which this deed is given, being more fully described as follows:* Being a <u>strip of land</u> one hundred feet wide and one hundred + ninety four feet four inches (194.4) long more or less including through and across the lands of the said O.L. Porter situated in Newton County Georgia. The metes and bounds and location of which being fully and minutely shown on map hereto attached and made a part hereof. Said <u>strip or part of land</u> containing in all 30.45 acres more or less. Said <u>strip of land</u> having measured from station 4.3x67.6 to station 4.3x62.

*TOGETHER with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in anywise appertaining.*

*TO HAVE AND TO HOLD the said <u>body of Land</u>, with all and singular the rights, members and appurtenances thereunto appertaining unto the said party of the second part, its successors and assigns, <u>in Fee Simple forever</u>; and the said part of the first part, and his heirs, the <u>said bargained lot of Land</u> unto the said part of the second part, and its successors and assigns, against the said party of the first part, and* his *heirs, executors and administrators, and against all and every other person or persons shall and will warrant and forever defend by virtue of these presents.*

*IN WITNESS WHEREOF, The said party of the first part has hereunto set his hand and affixed* his *seal, and delivered these presents, the day and year first above written.*

*SIGNED, SEALED AND DELIVERED IN PRESENCE OF*

A.H. Gray
L.W. Black
B.H. Woodruff. R.P.

Geo. B. Stanton (L.S.)

Joint Not. Transcribed Conveyances Ex. 1, at 56-57 (emphasis added).

As with the MGAR form deeds, the Court must construe these deeds in the context of the Georgia Code.[20]  The statute requires the railroad to first survey the land that it intends to take, limits the acquisition of property for railroad purposes only, and limits the purchase of property to what is necessary for construction of the railroad and its stations.  Ga. Code Ann. § 2167 (1895).

The Porterdale deeds, unlike the MGAR form deeds, do not reflect the railroad's exercise of eminent domain power, as they do not include any reference to a survey by the railroad on the grantors' lands.  Rather, these deeds reflect conveyance of a "bargained lot of land."  Additionally, other than the Clark deed, which the Court construes separately, the Porterdale deeds do not contain language that the land conveyed was to be used for railroad purposes only.  Significantly, other than the Clark deed, the Porterdale deeds do not contain the words "right of way" or limit the use of the conveyance to railroad purposes.  Instead, they convey outright a "strip of land" or "tract" or "body of land" or "bargained lot of land" to the railroad and its successors and assigns in fee simple forever with a warranty.  The conveyance is titled "deed," not "right of way."

The Supreme Court of Georgia addressed a similar conveyance in <u>Johnson v. Valdosta, M. & W.R. Co.</u>, and concluded that the interest conveyed to a railroad was a fee simple. 150 S.E. at 848.  The deed at issue in <u>Johnson</u>, from J.F. Cooper to the railroad, signed on December 15, 1909, conveyed to the railroad:

> "[A]ll that tract or parcel of land situate, lying, and being in the County of Colquitt and State of Georgia," being "a strip of land sixty feet wide for a railroad right of way over, upon, and across" the home place of the grantor. Said deed contains also the following recitals and warranty, to wit: "Said right of way running from a southeasterly and in a northwesterly direction over and across said above-described lands to where the right of way hereby conveyed leaves said land at the public road, there being about two acres more or less of said land conveyed; which said tract or parcel of land the said J. F. Cooper will well and truly warrant and defend from the claim of all persons whatsoever, unto the said Valdosta, Moultrie & Western Railroad, its successors and assigns, forever in fee simple."

<u>Id.</u> at 846-47.  The <u>Johnson</u> Court found that the grantor warranted "title forever in fee simple" to the tract of land and expressly agreed to defend the title against all claims against the railroad, and its successors and assigns.  <u>Id.</u> at 847.  While the Supreme Court of Georgia acknowledged that previous decisions had held that the words "forever in fee simple" did not demand the construction of the deed as conveying fee title, the Court found that "the warranty clause and the phrase 'forever in fee simple" were "potent, when considered in connection with the other terms of th[e] deed . . .

---

[20]     Because the Porterdale deeds were all executed in 1899, the 1895 version of the Georgia Code governs these conveyances.  Similar to the 1882 version of the statute that controls the MGAR form deeds, the 1895 version required the railroad to "cause such examinations and surveys to be made for the proposed railroad as shall be necessary to the selection of the most advantageous route, and for such purposes to be empowered . . . to enter upon the land or water of any person for that purpose."  Ga. Code Ann. § 2167 (1895).  However, the 1895 version includes a provision that the railroad "shall be responsible for all damage done by injury to property," which was not in the 1882 version of the statute.

." Id.  Although the <u>Johnson</u> deed stated that the strip of land was for a railroad right of way, it did not mention that the right of way had to be used for railroad purposes or indicate that the railroad in <u>Johnson</u> had recently exercised its power of eminent domain.

Because the Porter deed and the analogous Porterdale Spur deeds do not include any language indicating the railroad conducted a survey or limited the use of the land to railroad purposes but do contain a habendum clause stating that the railroad and its successors were to have and to hold the land forever, and the grantor would "forever warrant and defend the title hereby conveyed" "forever in fee simple," the Court finds that the Porter, Peek, Beebe, Webb, and N.C. Lee deeds conveyed a fee simple to the railroad.  The Court therefore grants summary judgment in favor of Defendant as to Plaintiffs City of Covington (Claim No. 2), Elizabeth S. Hutchins and Jack Lee Meadors, Jr. Trust (Claim No. 9), Helen J. Hester (Claim No. 13), and Shirt Factory LLC (Claim No. 17).

The Clark deed is a different matter.  The April 20, 1899 Clark deed was identical to the other Porterdale deeds except for the following additional provision:

> No part of this Right of Way can be used for a wagon road, leased or sold for manufacturing, warehouses <u>or any other purposes except for right of way of the Central of Georgia Railway Company, or its successors and assigns</u>.

Joint Not. Transcribed Conveyances Ex. 2, at 67 (emphasis added).  This addition is significant.  Because the Clark deed twice characterized the property conveyed as a right of way and clearly and unequivocally limited the use of the land to be a "right of way of the Central of Georgia Railway Company or its successors and assigns," the Court finds that it conveyed an easement to the railroad, and grants partial summary judgment to Plaintiffs Clark's Grove LLC (Claim Nos. 7 and 18) for the portions of those parcels that are governed by the Clark deed.[21]  The Court denies summary judgment to both parties as to Plaintiff Clark's Grove Neighborhood Association, Inc. (Claim No. 16) because it is unclear based on the maps provided by the parties the extent to which the Porter deed, which conveys a fee simple, or the Clark deed, which conveys an easement, applies to this parcel.

**<u>Were the Terms of the Original Easements Limited to Use For Railroad Purposes or Did They Include Future Use as Public Recreational Trails?</u>**

For the deeds that the Court has construed as conveying easements, the next step in the <u>Preseault</u> analysis is to determine whether the terms of the easement permitted the future use of the land as a recreational trail.  <u>Preseault II</u>, 100 F.3d at 1553 (Rader, J., concurring).  Plaintiffs argue that these deeds conveyed an easement for railroad purposes only.  Defendant argues that they created easements broad enough to encompass railbanking and public trail use based on the

---

[21]     The majority of Clark's Grove LLC Claim No. 7 is governed by the Clark deed, but one small portion is governed by the Webb deed and another small portion is governed by the Porter deed.  Brannon Decl. Ex. 1 (ECF No. 37).  The majority of Clark's Grove LLC Claim No. 18 is governed by the N.C. Lee deed, however a portion of the parcel is governed by the Clark deed.  <u>Id.</u>

language that the strip of land was conveyed as a right-of-way or "for any other use, in the discretion of said Company." Joint Not. Transcribed Conveyance Ex. 1, at 10.

The Court finds that these easements were not broad enough to encompass trail use. Based on Georgia law, the Court finds that the phrase "for any other use, in the discretion of said Company" was not intended to permit any possible future use of the easement by the railroad's successors, including recreational trail use, but limited the easement to what the railroad lawfully had discretion to do under its charter and statute. The railroad's charter stated that the corporation

> shall have the right and authority to construct, lay out, maintain, equip and operate a line of railroad from the town of Eatonton, in Putnam county, to the town of Machen, in Jasper county, in this State, and shall have all the powers, rights, franchises and facilities necessary and proper to successfully accomplish and maintain the objects herein specified. Said corporation may operate said railroad by steam, electricity, or any other motive power that may be deemed proper by its Board of Directors. It may purchase, condemn and acquire such right-of-way, not exceeding 200 feet in width, terminal facilities, and other real estate along its line, for depot purposes, tanks, side tracks, turnouts, switches, or any other objects that may be necessary or proper for its use, to aid in accomplishing its construction and operation.

Pls.' Mot. Summ. J. App. C, at C-4. This charter limited the railroad's powers to uses related to carrying out railroad business.

Further, no part of the Georgia Code governing the power of railroads authorized such corporations to create recreational trails. A railroad corporation was described in the statute as a company with the purpose of "constructing, maintaining and operating a railroad for public use in the conveyance of persons and property" or with the purpose of "maintaining and operating any railroad already constructed for the like public use." Ga. Code Ann. § 1689(a). The statute also stated:

> [i]n the event of any company organized under the provisions of this section does not procure from the owner or owners thereof, by contract, lease or purchase, the title to the lands, or right of way, or other property necessary or proper for the construction or connection of said railroad and its branches or extensions . . ., it shall be lawful for said corporation to construct its railroad over any lands belonging to other persons, or over such rights of way or tracks of other railroads as aforesaid, upon paying or tendering to the owner thereof, or to his or her or its legally authorized representative, just and reasonable compensation for the right of way . . . .

Id. at § 1689(l) (emphasis added). These statutory provisions establish that, under Georgia law, railroads were not empowered to use their easement in any possible way, but were limited to the purposes of "constructing, maintaining and operating" a railroad.

The "discretion" of the railroad described in the deeds was bounded by the Georgia Code and the railroad's charter, which did not permit the railroad to operate a recreational trail. See Tompkins v. Atl. Coast Line R. Co., 96 S.E.2d 603, 605 (Ga. 1957) (holding that the outermost,

unfettered limit of such an easement was what was convenient or necessary for railroad operations); Coffee Cty., 110 S.E. at 216 (when a grantor conveyed a right-of-way easement, this easement consisted of what "'[was] requisite to effect the purposes for which the property [was] acquired'" (quoting 2 Elliot on Railroads, § 400)).

In Preseault II, the Federal Circuit found that the terms of the easements at issue there did not contemplate the use of the land as public trails.  The Preseault II court explained:

> When the easements here were granted to the Preseaults' predecessors in title at the turn of the century, specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained? We think not. Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different. In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation. In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise or recreation on foot or on bicycles. It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.

Preseault II, 100 F.3d at 1542-43.  Similarly, in the instant case, a public recreational trail use is fundamentally different and broader than a commercial use devoted to the operation, construction, and maintenance of a railroad.

## Conclusion

1.     Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**, and Defendant's Motion for Partial Summary Judgment is **DENIED** on the claims of Plaintiffs:

- City of Covington (Claim Nos. 35, 55, 123, 141, and 278)

- Donald R. and Lois G. Griffin (Claim No. 24)

- ULKAFAW Corporation (Claim No. 25)

- Bradford S. and Robert S. Jones (Claim No. 28)

- Greyland Real Estate Investments Inc. (Claim Nos. 41 and 43)

- Robert L. Faulkner (Claim No. 42)

- Dennis R. and Judy M. Hooten (Claim No. 45)

- Gail W. Carter (Claim No. 47)

- Edward Phillip Stone (Claim No. 48)

- Marion P. and J. JoAnn Restivo, III (Claim No. 54)

- Marcia A. Huguelet (Claim No. 88)

- Joseph J. Marino (Claim No. 105)

- Reginald F. and Yvonne I. Henry (Claim No. 125)

- Willard Mastin (Claim No. 135)

- David and Vivian Alcantara (Claim No. 140)

- Sam B. Hay, Jr. (Claim No. 142)

- Winston and Patricia Munroe (Claim No. 162)

- Jacinda M. Rentrope (Claim No. 164)

- Sheylah Alcide (Claim No. 168)

- Isaac Semador (Claim No. 171)

- Elaine H. Pulliam (Claim Nos. 173 and 280)

- Lester M. and Connie M. Castleberry (Claim Nos. 175 and 177)

- James W. Johnson (Claim No. 184)

- Mary Jane Dixon (Claim No. 186)

- Betty Jean Pickens (Claim No. 187)

- Wendy M. and Robert L. Hankins (Claim No. 188)

- Robert M. Zenko (Claim No. 193)

- Ricky Joe and Phyllis S. Hackett (Claim No. 197)

- William R. and Patricia E. Crawford, III (Claim No. 202)

- Maderriel S. Milford (Claim No. 214)

- W.D. Ballard and Nancy Mock (Claim No. 216)

- Steven T. and Rhonda K. Roule (Claim No. 217)

- Catherine Ann Jones (Claim No. 236)

- Perry Charles Lunsford (Claim No. 239) and

- Rick and Nancy Mock (Claim Nos. 275, 276, and 277).

2.   Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** on the claims of Plaintiff:

- Clark's Grove, LLC (Claim Nos. 7 and 18).

3.      Defendant's Motion for Partial Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment is **DENIED** on the claims of Plaintiffs:

- City of Covington (Claim No. 2)

- Elizabeth S. Hutchins and Jack Lee Meadors, Jr. Trust (Claim No. 9)

- Helen J. Hester (Claim No. 13)

- Shirt Factory, LLC (Claim No. 17) and

- Betty Walton (Claim No. 274).

4.      Based on the current record, the Court **DENIES** Plaintiffs' and Defendant's cross-motions for partial summary judgment on the claims of Plaintiffs:

- Clark's Grove Neighborhood Association, Inc. (Claim No. 16)

- City of Covington (Claim Nos. 32 and 34)

- Greyland Real Estate Investments Inc. (Claim No. 39)

- Miller Property and Renovation (Claim No. 60) and

- Randall and Katheryn Smith (Claim No. 155).

5.      The Court will conduct a telephonic status conference on **November 29, 2017**, at **3:00 p.m. E.S.T.**  The Court will initiate the call.


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

# Appendix A

The 47 Plaintiffs and their claims are:

| Plaintiff | Claim Number(s) |
|---|---|
| The City of Covington | 2, 32, 34, 35, 55, 123, 141 |
| Clark's Grove LLC | 7, 18 |
| Elizabeth S. Hutchins and Jack Lee Meadors, Jr. Trust | 9 |
| Helen J. Hester | 13 |
| Clark's Grove Neighborhood Association, Inc. | 16 |
| Shirt Factory, LLC | 17 |
| Donald R. Griffin | 24 |
| ULKAFAW Corporation | 25 |
| Bradford S. and Robert S. Jones | 28 |
| Greyland Real Estate Investments, Inc. | 39, 41, 43 |
| Robert L. Faulkner | 42 |
| Dennis R. and Judy M. Hooten | 45 |
| Gail W. Carter | 47 |
| Edward Phillip Stone | 48 |
| Marion P. and JoAnn Restivo, III | 54 |
| Miller Property and Renovation, LLC | 60 |
| Marica A. Huguelet | 88 |
| Joseph J. Marino | 105 |
| Reginald F. and Yvonne I. Henry | 125 |
| Willard Mastin | 135 |
| David and Vivian Alcantara | 140 |
| Sam B. Hay, Jr. | 142 |

| | |
|---|---|
| A. Randall and Katheryn P. Smith | 155 |
| Winston and Patricia Monroe | 162 |
| Jacinda M. Rentrope | 164 |
| Sheylah Alcide | 168 |
| Isaac Semador | 171 |
| Elaine H. Pulliam | 173, 280 |
| Lester M. and Connie M. Castleberry | 175, 177 |
| James W. Johnson | 184 |
| Mary Jane Dixon | 186 |
| Betty Jean Pickens | 187 |
| Wendy M. and Robert L. Hankins | 188 |
| Robert M. Zenko | 193 |
| Ricky Joe and Phyllis S. Hackett | 197 |
| William R. and Patricia E. Crawford III | 202 |
| Maderriel S. Milford | 214 |
| W.D. Ballard and Nancy Mock | 216 |
| Steven T. and Rhonda K. Roule | 217 |
| Catherine Ann Jones | 236 |
| Perry Charles Lunsford | 239 |
| Leonard D. and Arsie Hardeman | 261 |
| Gloria J. Jackson | 263 |
| Anderson Hart, Jr. on behalf of the GA Building Authority | 266 |
| Louise Sanford | 267 |
| Betty Walton | 274 |
| Rick ("Ricky") and Nancy Mock | 275, 276, 277 |

# Appendix B

There are 23 substantively identical preprinted forms issued by the railroad that contain language that is substantially similar to the S.B. Mixon deed signed in 1891, and eight additional deeds that are variations on the preprinted form.[22]  Because several of the original grantors shared names or granted more than one conveyance, the Court identifies specific deeds both by the name of the grantor and the location of the conveyance in the parties' claims books.  For example, the Mixon deed is located at Book X, page 392.  These deeds are:

| Deed | Claim Book Location |
|------|---------------------|
| Corley | X/416 |
| Pace | Z/58 |
| Cannon | Z/7 |
| **Brown** | **Y/135** |
| Pace | X/385 |
| Wright[23] | X/388 |
| Simms | Y/134 |
| Usher | Y/133 |
| Henderson[24] | X/433 |
| Mixon | X/392 |
| Neal | X/382 |
| Henderson | X/432 |
| Butler | X/421 |
| **Lee** | **Y/577** |

---

[22]     The modified deeds are listed in bold.

[23]     The record contains both a White deed, which was "left for record" on June 1, 1891, and a Wright deed, dated April 9, 1890.  Pls.' Mot. Summ. J. Ex. F; Def.'s Mot. Summ. J. Ex. Q.  Both deeds are located at Book X, page 388 but are two distinct conveyances.

[24]     The record contains both a Hawkins deed, which was "left for record" on June 1, 1891, and a J.F. Henderson deed, dated April 11, 1890.  Pls.' Mot. Summ. J. Ex. X; Def.'s Mot. Summ. J. Ex. P.  Both deeds are located at Book X, page 433 but are two distinct conveyances.

| | |
|---|---|
| Hight | X/431 |
| **A.E. Dearing** | **X/379** |
| **J.J. Dearing** | **X/378** |
| Johnson | X/414 |
| Petty | X/383 |
| Bagby | X/422 |
| **J.C. Anderson** | **X/441** |
| **Belcher** | **X/423** |
| **M.J. Anderson** | **X/427** |
| **Skinner** | **X/424**[25] |
| Smith | X/444 |
| Skinner | X/436 |
| Hays | X/431 |
| Jackson | X/414 |
| Armstrong | X/426 |
| Robinson & Hardeman | X/410 |

---

[25]     This is the May 25, 1886 Skinner deed.  Plaintiffs list this deed as being found in Book X, page 424, however the deed itself does not indicate a book location.  See Joint Not. Transcribed Conveyances Ex. 1, at 30-31; see also Def.'s Mot. Summ. J. App. A, at 5.